Opinion issued April 19, 2007









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00749-CV

 __________


BERNARD J. TOOMEY, JOHN J. TOOMEY, JR., STEPHEN TOOMEY,
TANNIE TOOMEY, RICHARD TOOMEY, AND TEJAS TOYOTA, INC.,
Appellants


V.


TEXAS DEPARTMENT OF TRANSPORTATION, Appellee






On Appeal from County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 809725






MEMORANDUM OPINION

 Appellants, Bernard J. Toomey, John J. Toomey, Jr., Stephen Toomey, Tannie
Toomey, Richard Toomey, and Tejas Toyata, Inc. (collectively "the property
owners"), sued appellee, the Texas Department of Trasportation ("TxDot"), for flood
damage allegedly caused by TxDot's construction of a drainage ditch near U.S.
Highway 59. The trial court granted TxDot's plea to the jurisdiction and dismissed
the case. In three issues, the property owners argue that the trial court erred (1) "in
dismissing the case, upon a Plea which addressed the allegations in one of the
alternative causes of action stated in [the property owners'] petition, only, no
evidence having been adduced"; (2) in not addressing TxDot's special exceptions
before dismissing the case; and (3) in dismissing the cause with prejudice when no
evidence was presented. 

 We affirm.

Background
 

 In their original petition, the property owners alleged that TxDot constructed
a concrete-lined ditch for the purpose of draining surface water from a portion of U.S.
Highway 59 eventually emptying into waterways under the jurisdiction of the Harris
County Water Control District. The ditch was built on a 60-foot-wide tract of land
abutting the entire northern boundary of the property owners' land. TxDot
constructed, within the concrete-lined ditch, a "rip-rap" dam, "reducing the flow of
water downstream significantly, causing damages to [the property owners]."

 The property owners further alleged that, "on or about October 28 or 29, 2002, (1)
after construction of the dam, the Humble area sustained rainfall overnight in such
quantities that the drainage of that portion of the highway, which was funneled into
the ditch so impeded, flooded [the property owners'] real property." The ditch was
allegedly constructed for "a public purpose to prevent flooding of properties
downstream," and "the flooding caused damages to the Plaintiff Tejas Toyota, Inc.,
whose automobiles [sic] damaged, as well as to the leasehold estate, for which no
compensation was offered." The property owners alternatively sued for negligence. 

 TxDot filed special exceptions and a plea to the jurisdiction, which it later
amended. In its amended plea to the jurisdiction, TxDot argued that the property
owners failed to establish (1) that TxDot acted intentionally, because, among other
things, the property owners complained only of a single flooding event and (2) that
the property was taken for public use. TxDot further asserted that attempting to evade
the reach of sovereign immunity by casting the dispute in other terms does not change
the inherent character of the dispute. The parties agreed to have the plea submitted
without an oral hearing, and the trial court granted the amended plea and dismissed
the property owners' suit with prejudice. 


Applicable Law


A. The Sovereign Immunity Doctrine

 Texas has long recognized that sovereign immunity, unless waived, protects
the State of Texas, its agencies, and its officials from lawsuits for damages, absent
legislative consent to sue the State. Dir. of Dep't of Agric. & Env't v. Printing Indus.
Ass'n of Tex., 600 S.W.2d 264, 265 (Tex. 1980); Griffin v. Hawn, 341 S.W.2d 151,
152-53 (Tex. 1960); Hosner v. DeYoung, 1 Tex. 764, 769 (1847). Sovereign
immunity embraces two principles: immunity from suit and immunity from liability. 
Mo. Pac. R.R. Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970). 
Immunity from suit bars a suit against the State unless the Legislature expressly
consents to the suit. Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d
849, 853 (Tex. 2002). If the Legislature has not expressly waived immunity from
suit, the State retains such immunity even if its liability is not disputed. Fed. Sign v.
Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). Immunity from liability protects the
State from money judgments even if the Legislature has expressly given consent to
sue. IT-Davy, 74 S.W.3d at 853. The bar of sovereign immunity is a creature of
common law and not of any legislative enactment. Tex. A&M Univ.-Kingsville v.
Lawson, 87 S.W.3d 518, 520 (Tex. 2002). 

 The Texas Supreme Court has long recognized that "it is the Legislature's sole
province to waive or abrogate sovereign immunity." Fed. Sign, 951 S.W.2d at 409. 
The Legislature may consent to suits against the State by statute or by resolution. 
Gen. Serv. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). 
The Legislature is better suited than the courts to weigh the conflicting public policies
associated with waiving immunity and exposing the government to increased liability,
the burden of which the general public must ultimately bear. IT-Davy, 74 S.W.3d at
854. Legislative consent for suit or any other sovereign immunity waiver must be "by
clear and unambiguous language." Univ. of Tex. Med. Branch at Galveston v. York,
871 S.W.2d 175, 177 (Tex. 1994); Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980).

 Immunity from liability protects the State from judgments even if the
Legislature has expressly given consent to the suit. Mo. Pac. R.R., 453 S.W.2d at
813. Even if the Legislature authorizes suit against the State, the question remains
whether the claim is one for which the State acknowledges liability. See State v.
Isbell, 94 S.W.2d 423, 425 (Tex. 1936). The State neither creates nor admits liability
by granting permission to be sued. Tex. Civ. Prac. & Rem. Code Ann. § 107.002
("A resolution granting permission to sue does not waive to any extent immunity from
liability."); Isbell, 94 S.W.2d at 424-25. 

B. Plea to the Jurisdiction

 A plaintiff who sues the State must establish the State's consent to sue. Tex.
Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Otherwise, sovereign
immunity from suit defeats a trial court's subject-matter jurisdiction. Id. The State
may assert sovereign immunity from suit in a plea to the jurisdiction. Id. A plea to
the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of
subject-matter jurisdiction, thus defeating "a cause of action without regard to
whether the claims asserted have merit." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d
547, 554 (Tex. 2000). Subject-matter jurisdiction is essential to the authority of a
court to decide a case. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998). 

 In a suit against a governmental unit, the plaintiff must affirmatively
demonstrate the court's subject-matter jurisdiction by alleging a valid waiver of
immunity. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003). 
To determine whether the plaintiff has met that burden, we consider the facts alleged
by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence
submitted by the parties. Id. (quoting White, 46 S.W.3d at 868). "[I]f the pleadings
affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may
be granted without allowing the plaintiff an opportunity to amend." County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). Because immunity from suit
defeats a trial court's subject-matter jurisdiction, immunity from suit may properly be
asserted in a plea to the jurisdiction. See Tex. Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 225-26 (Tex. 2004).

 We review a trial court's ruling on a jurisdictional plea de novo, construing the
pleadings in the plaintiff's favor and looking to the pleader's intent. Id. at 226;
IT-Davy, 74 S.W.3d at 855. Whether the pleader has alleged facts that affirmatively
demonstrate subject-matter jurisdiction is a legal question that we review de novo. 
Miranda, 133 S.W.3d at 226. "If a plea to the jurisdiction challenges the existence
of jurisdictional facts, [a court is to] consider relevant evidence submitted by the
parties when necessary to resolve the jurisdictional issues raised." Id. at 227. Yet,
"[i]f the evidence creates a fact question regarding the jurisdictional issue, then the
trial court cannot grant the plea to the jurisdiction, and the fact issues will be resolved
by the fact finder." Id. at 227-28.

C. Inverse Condemnation and Federal Takings Clause

 The Fifth Amendment states: "[N]or shall private property be taken for public
use, without just compensation." U.S. Const. amend. V. The Texas Constitution
provides that, "No person's property shall be taken, damaged or destroyed for or
applied to public use without adequate compensation being made, unless by the
consent of such person . . . ." Tex. Const. art. I, § 17. Although sovereign immunity
generally protects the State from lawsuits for monetary damages, it offers no shield
against a taking claim brought under article 1, section 17 of the Texas Constitution. 
Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980); see also Little-Tex, 39
S.W.3d at 594. 

 To recover damages for inverse condemnation, the property owners would have
to prove that TxDot intentionally took or damaged their property for public use, or
were substantially certain that would be the result. See Tex. Const. art. I, § 17; City
of Dallas v. Jennings, 142 S.W.3d 310, 313-14 (Tex. 2004). To defeat TxDot's plea
to the jurisdiction, however, the property owners need only plead sufficient facts to
show the elements of an inverse-condemnation cause of action. See Kerr v. Tex. Dep't
of Transp., 45 S.W.3d 248, 251 n.3 (Tex. App.--Houston [1st Dist.] 2001, no pet.).

Analysis


 The property owners complain that they should have been given an opportunity
to amend their pleadings if the pleadings were deficient. They contend that their
amendment would include additional facts relating to TxDot's intentional act. They
would further amend to include language showing that TxDot used "mechanical
equipment" when it negligently constructed the dam, thus waiving immunity under
the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001
(Vernon 2005). Finally, the property owners contend that the trial court erred in
dismissing the case with prejudice because that is a comment on the merits.

A. Special Exceptions

 TxDot filed special exceptions to the property owners' petition. Specifically,
it complained of the property owners' (1) failure to plead the amount of damages
sought, (2) failure to plead proper damages, (3) failure to plead the requisite essential
elements of an inverse claim, and (4) failure to plead the requisite essential elements
of a negligence claim. The property owners did not respond to the special exceptions. 
Instead, the property owners and TxDot filed a joint "Motion for Ruling on State's
First Amended Plea to the Jurisdiction," wherein the parties asked the trial court to
expedite its ruling on TxDot's plea to the jurisdiction "without the necessity of a
hearing." A few days after filing the joint motion, the property owners filed their
response to TxDot's plea to the jurisdiction. In the response, the property owners
stated as follows:

 Defendants [sic] pleas to the jurisdiction are based upon the
insufficiency of the pleading, no evidence having been adduced in
connection with the pleas, by either party. The Defendant Texas
Department of Transportation correctly states that this question is to be
determined by the Court as a matter of law, in a case in which no
evidence has been adduced. In so doing, however, the Court is
restricted to a consideration of the Plaintiffs' pleadings, to determine
whether such a suit has been alleged. Thus, Defendant's allegations that
Plaintiffs have not produced evidence are immaterial to this decision, as
no action has been taken to date which involves introduction of
evidence.


(Emphasis added. Internal citation omitted.) Because they did not object to the trial
court's failure to rule on TxDot's special exceptions, and because they affirmatively
sought a ruling from the trial court in the absence of evidence, we hold that the
property owners have waived these complaints on appeal. See Tex. R. App. P. 33.1. 

B. Plea to the Jurisdiction

 Intentional Act

 The requisite intent is present when a governmental entity knows that a specific
act is causing identifiable harm or knows that the harm is substantially certain to
result. City of Dallas v. Jennings, 142 S.W.3d 310, 314 (Tex. 2004). In the case of
flood-water impacts, recurrence is a probative factor in determining the extent of the
taking and whether it is necessarily incident to authorized government activity, and
therefore, substantially certain to occur. Tarrant Regional Water Dist. v. Gragg, 151
S.W.3d 546, 555 (Tex. 2004). While nonrecurrent flooding may cause damage, a
single flood event does not generally rise to the level of a taking. Id. The recurrent
requirement assures that the government is not held liable for taking property when
a project's adverse impacts, and by implication its benefit to the public, are too
temporal or speculative to warrant compensation. Id.

 The property owners allege only a single flooding event. Without recurrence,
the property owners cannot demonstrate that TxDot knew that the flooding was
"substantially certain to result from [its] authorized government action." See
Jennings, 142 S.W.3d at 314.

 Taking

 Under article I, section 17 of the Texas Constitution, there is no taking when
damage is temporary and it results from an isolated event, as opposed to being
permanent, frequent, or inevitable due to a fixed condition. See Brazos River Auth.
v. City of Graham, 354 S.W.2d 99, 106-08 (Tex. 1963) (explaining that temporary
flooding is not a taking). In Brazos, the City of Graham alleged that the river
authority had taken three city-owned properties as a result of flooding associated with
the construction of the Possum Kingdom Dam. See id. at 101. Although flooding on
at least one or two occasions damaged all three of the properties, the evidence
established that only one of the three properties was subject to continuous, repeated
flooding due to the dam. See id. at 104. As a result, the trial court held that a single
flood would not support an award for the entire value of the property flooded. See
id. at 107. The trial court noted, however, that, "until a plaintiff is in a position to
establish the repetitious nature on the injury, he should be confined in his demand for
damages to those flowing directly from the single injury or flooding." Id. at 108. 

 Like the flood in Brazos, the damages in the present case were caused by an
isolated event that caused temporary damage. The pleadings do not reflect that
frequent or recurring flooding occur. Accordingly, because an isolated, flooding
event does not amount to an unconstitutional taking, we hold that the trial court did
not err in granting TxDot's plea to the jurisdiction. See id. at 106-08.

C. Negligence

 The property owners also pled that, "[t]he flooding, in the alternative was
caused by the negligence of Defendants in obstructing the ditch which had been
engineered to accommodate the surface water draining from a specific portion of U.S.
Highway No. 59, which was the proximate cause of Plaintiffs' damages . . . ." 
Attempting to evade the reach of sovereign immunity by casting a dispute in terms
of a negligence claim does not change the inherent character of the dispute. See
Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002). Further, the
property owners failed to plead facts that would show that TxDot waived its
governmental immunity from suit. See LeLeaux v. Hamshire-Fannett ISD, 835
S.W.2d 49, 51 (Tex. 1992) (holding that it must be governmental employee's
negligent operation or use of motor-driven vehicle or piece of equipment that caused
damage or injury). The property owners were required to plead that (1) the property
damage arose from the operation or use of motor-driven equipment and (2) TxDot's
employee would be personally liable to the property owners. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.021.(1) (Vernon 2005). Accordingly, we hold that the trial
court did not err in granting TxDot's plea to the jurisdiction.

D. With Prejudice

 The property owners maintain that the trial court improperly dismissed the case
with prejudice. The property owners bear the burden of demonstrating how TxDot's
immunity from suit has been waived. See Whitley, 104 S.W.3d at 542; Tex. Dep't of
Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001). The property owners
must establish TxDot's consent to suit, which may be alleged either by reference to
a statute or to express legislative permission. See Tex. Dep't of Transp. v. Jones, 8
S.W.3d 636, 638 (Tex. 1999). To challenge whether a plaintiff has affirmatively
demonstrated facts that would vest the trial court with jurisdiction over the plaintiff's
claims, a defendant may file a plea to the jurisdiction. See Harris County v. Sykes,
136 S.W.3d 635, 638 (Tex. 2004).

 When the trial court acknowledges the governmental unit's assertion of
sovereign immunity, and the plaintiff's failure to bear its burden of establishing
waiver of sovereign immunity, it may sustain the plea to the jurisdiction and dismiss
the case with prejudice. See id. at 639. If the pleadings affirmatively negate the
existence of jurisdiction, then the trial court may sustain a plea to the jurisdiction
without allowing a plaintiff the opportunity to amend his or her pleadings. See
Brown, 80 S.W.3d at 555. Accordingly, we hold that the trial court did not err in
dismissing the property owners' case with prejudice.

Conclusion


 We affirm the trial court's judgment.



 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.



 
1. The petition, alleging the single flooding event, was filed more than one year after the flood.