

NUMBER 13-13-00314-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE CITY OF CORPUS CHRISTI,                                    Appellant,

v.

AGUIRRE PROPERTIES, INC.
AND GILBERT AGUIRRE, II,                                    Appellees.

**On appeal from the 347th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

In this interlocutory appeal, the City of Corpus Christi (the "City") appeals the trial court's denial of its plea to the jurisdiction in a suit filed by Aguirre Properties, Inc. and Gilbert Aguirre, II (the "Plaintiffs") asserting claims against the City for negligence,

unconstitutional takings, and nuisance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2012). The City contends that the trial court's denial of its plea to the jurisdiction was erroneous for three reasons: (1) the Plaintiffs failed to affirmatively demonstrate a waiver of the City's immunity from suit under the Texas Tort Claims Act ("TTCA") and therefore failed to establish the trial court's jurisdiction over their negligence claims; (2) the Plaintiffs failed to plead their takings claims sufficiently to establish jurisdiction; and (3) the Plaintiffs failed to plead their nuisance claims sufficiently to establish jurisdiction. For the reasons set forth below, we affirm the trial court's order in part and reverse it in part. Specifically, we reverse the trial court's order to the extent that it denied the City's plea to the jurisdiction with respect to the Plaintiffs' takings claims based on the three occurrences of flooding alleged in their original petition. We render a judgment dismissing those claims. In all other respects, we affirm the trial court's order. The case is remanded for further proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

### A. Plea to the Jurisdiction

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the record de novo to determine whether the trial court has subject matter jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). "We consider only the evidence pertinent to the jurisdictional inquiry and do not weigh the merits." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Also, we construe the pleadings in favor of the plaintiff, accepting all its allegations as true. *Bland Indep. Sch. Dist.*, 34 S.W.3d at

555. To prevail, the defense must show that, even accepting all of the plaintiff's allegations as true, an incurable jurisdictional defect remains on the face of the pleadings that deprives the trial court of subject matter jurisdiction. *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 56 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## B. Immunity from Suit

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction over lawsuits in which the State or certain governmental units have been sued unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Miranda*, 133 S.W.3d at 226–27. If a plea to the jurisdiction challenges the jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *Bland Indep. Sch. Dist*, 34 S.W.3d at 555. If that evidence creates a fact issue as to jurisdiction, then it is for the fact-finder to decide. *City of Waco*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228.

## II. THE PLAINTIFFS' FACTUAL ALLEGATIONS

In this case, the trial court did not hold an evidentiary hearing, and the City did not offer any evidence in support of its plea to the jurisdiction. Therefore, we determine jurisdiction based on the allegations in the Plaintiffs' original petition, which is their live pleading. *See Miranda*, 133 S.W.3d at 226–27.

In relevant part, the Plaintiffs allege the following facts in their original petition:

7. Plaintiffs suffered damage to their property located at 2302 N. Port @ [sic] Broadway, Corpus Christi, Texas 78401, Nueces County, Texas (hereinafter "Property") as a result of multiple occurrences caused by the city.

8. On or about July 15, 2010 the City's Water Department responded to a call from Plaintiff Mr. Aguirre regarding a water leak on the Property. Upon inspection by the City, the City uncovered "a damaged sewer line." The City using motor-driven vehicles and or equipment attempted to repair the damaged sewer line. Unfortunately the City's efforts failed.

9. Less than three weeks later, on or about August 9, 2010, the City was working on a water line running parallel no more than ten feet away from the Property. Utilizing motor-driven vehicles and/or equipment, the City negligently caused a raw sewage line to rupture, resulting in the mixing of drinking water with raw sewage as well as causing significant backflow flooding through the sewage line and above ground flooding. There were tire tracks in the mud going right up to the work site, evidencing the City's use of motor-driven vehicles and/or equipment.

10. The City, knowing it had caused the sewage line rupture resulting in flooding and knowing that such flooding would cause substantial damage to the Property, used motor-driven vehicles and/or equipment to construct two dams (mounds of dirt) which resulted in the diversion of the water into the sewage outlet at the Property. As further acknowledgment of the City's knowledge and in addition to the mounds of dirt created by the City, the City had the Wastewater Department attend the site and "jet their main line." This "jetting" of the main line was also negligent in and of itself in the face of a sewage line which, not more than three weeks earlier, was reported damaged. Upon information and belief, jetting the main line further caused rupture to the sewage line exacerbating the increasingly foul situation developing on the Property. The flooding of the sewage system on August 9, 2010 caused by the City's actions resulted in severe drainage to the Property.

4

11. On or about August 10, 2010, Mr. Gilbert Aguirre, II discovered the damages caused by the City's actions and the resultant [property damage]. He contacted the City's contractor who he was aware had worked on the site previously. The foreman met with Gilbert Aguirre, II and told him that the mounds must have been constructed by City employees. The foreman called the City at that meeting. Unfortunately, the diverted sewage water flooded into the Property, causing significant property damages. The City of Corpus Christi acknowledged this was "waste water back up" in its correspondence attached hereto as Exhibit "A."

After the foreman contacted the City, the City sent a vacuum truck and additional motor vehicles and motor equipment to rectify the situation (the City actually sent a vacuum truck two times to unstick the water line). These actions in fact only exacerbated the property damages the Property sustained. . . .

12. Despite having actual knowledge of the sewage line rupture and of the damage that had resulted therefrom and which would continue absent rapid remedial actions by the City, the City failed to address the problem. As a result of the City's actions and/or omissions less than two weeks after the City's meeting with Mr. Aguirre about his claim for damages, a second flood occurred at the same location causing additional damages to the Property. On this occurrence, sewage flooded into the building through a bathroom up to two inches deep. The sewage floated across the 2,000 square foot building entirely submerging the floor and base boards and seeping into and climbing up the walls of the Property, before exiting the other side through the front of the building. After being notified once again about yet another flooding at the same location, the City again recklessly utilized motor vehicles and/or motor equipment in a second attempt to rectify the situation at the Property, which once more only further exacerbated the damages the Property sustained.

13. About three weeks later, on or about September 13, 2010, a third flood into the Property occurred. It was this third occurrence that caused the most significant damage to the Property. Again, the City recklessly utilized motor vehicles and motor equipment to attempt to rectify the situation, which again only further exacerbated the property damages the Property sustained.

14. The Property was used by . . . Mr. Aguirre to conduct his business, and he had plans to expand it. To this end, . . . Mr. Aguirre expended substantial amounts in improvements on the Property in order to further his business efforts. However, since the time of the first occurrence to the present, the Property, as a result of the City's actions has been rendered

5

entirely unusable for any purpose. Thus, Plaintiffs have been forced to unnecessarily suffer loss of income due to their inability to use the Property during this time frame. Moreover, Mr. Aguirre suffered physical injury (i.e., a respiratory infection) due to his exposure to the sewage left on the Property by the City and in which the City has continued to refuse to remedy.

### III. THE PLAINTIFFS' CAUSES OF ACTIONS

Based on the foregoing factual allegations, the Plaintiffs assert the following claims against the City for (1) negligence, (2) unconstitutional takings, and (3) nuisance.

## A. Negligence

15. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1–14 herein for all purposes.

16. Defendant City of Corpus Christi may be held to answer in a court of law for the occurrences just described because the Plaintiffs' assert that the employees of Defendant City of Corpus Christi were negligent in the operation of a motor vehicle and/or equipment on numerous occasions, so that sovereign immunity is waived under the Texas Tort Claims Act.

17. At all times material, all of the agents, servants, and employees of Defendant who were in any way connected with the subject occurrences were acting within the course and scope of their employment or official duties and in furtherance of the duties of their office or employment.

18. The occurrences described in this petition are a direct and proximate result of the negligence of the City of Corpus Christi and its agents, servants, and officers in the following particulars:

19. The motor vehicles and motor equipment were utilized by City employees acting within the scope of their employment. The flooding of the Property was proximately caused by the negligent operation and/or use of motor vehicles and motor equipment utilized by City employees when 1) initially breaking the sewage line and then attempting on numerous occasions as outlined above to 2) repair the broken raw sewage line and 3) rectify the resultant property damage to the Property.

20. As the direct and proximate result of negligence of the Defendant, Plaintiff Aguirre Properties, Inc. has suffered damages.

6

## B.  Taking:  Article I, Section 17 of the Texas Constitution

21.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1–20 herein for all purposes.

22.  Pleading in the alternative to the extent necessary, pursuant to Article I, section 17 of the Texas Constitution, "no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made."  A governmental entity is liable pursuant to Article I, section 17 of the Texas Constitution if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized governmental action.

23.  As set forth above, Defendant knew that the sewage maintenance was causing identifiable harm, or, in the alternative, the Defendant knew that the specific property damage was substantially certain to result from actions authorized by the Defendant because of the repeated flooding and because the Defendant had notice of the same.  Additionally, the City threw a rebar on Plaintiffs [sic] property, blocked the entry way onto Mr. Aguirre's loading dock which the City subsequently rebuilt in the wrong place, parked a steam roller in front of the gate for several months, had street signs and sand bags in front of both entrances, destroyed the property around the building by tearing out the blacktop and replacing it with dirt, and stored all its construction equipment on the property.  See, e.g., Exhibit A attached hereto (showing correspondence from the City's Wastewater Department to Mr. Aguirre and evidencing the City's actual knowledge of the initial occurrences).

Defendant's actions were for the purpose of a public use and Defendant has not provided Plaintiffs with just compensation therefor.  As a result, Plaintiffs' property was "taken, damaged, or destroyed for or applied to public use without just compensation."  Accordingly, Defendant is liable for the unconstitutional taking of Plaintiffs' property under the Texas Constitution.

## C.  Private Nuisance

24.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1–23 herein for all purposes.

25.    Pleading in the alternative, to the extent necessary, Defendant's actions constituted a private nuisance actionable under the laws of Texas.  Under Texas law, a defendant is liable for private nuisance if: (1) the defendant interfered with or invaded the plaintiff's interest in real property

7

by conduct that was either negligent or intentional and unreasonable; (2) the defendant's conduct resulted in a condition that substantially interfered with the plaintiffs' private use and enjoyment of the real property; and (3) the nuisance caused injury to the plaintiff. Further, a municipality or governmental unit may be liable under private nuisance if the municipality or governmental unit expressly waives its immunity, *see e.g.*, TEXAS TORT CLAIMS ACT, CIV. PRAC. & REM. CODE §§ 101.001 et seq., or immunity is contrary to the Texas Constitution, *see e.g.*, TEX. CONST. art. I, § 17.

26. The facts here show that the City has either waived immunity under the Texas Tort Claims Act and/or the City's actions rose to the level of an unconstitutional taking under the Texas Constitution. Thus the City may be liable for private nuisance. Further, the facts show that the City negligently and/or intentionally and unreasonably interfered with or invaded the Plaintiffs' interest in the Property by repeatedly causing sewage water to flood the Property. Such interference substantially interfered with Plaintiffs' private use and enjoyment of the Property by effectively prohibiting any and all use and enjoyment whatsoever of the Property. Defendant's nuisance caused the Plaintiffs to suffer injury and/or damages.

## IV. THE CITY'S PLEA TO THE JURISDICTION

### A. Negligence

As set forth above, the City filed a plea to the jurisdiction in which it argued that the Plaintiffs had failed to allege a waiver of immunity under the TTCA for purposes of their negligence claim:

> [T]he Texas Legislature has not waived DEFENDANT'S immunity from suit for this claim. PLAINTIFFS' lawsuit involves a claim against DEFENDANT for property damages arising from damage to a waste water main caused by natural shifting of the Earth. . . . PLAINTIFFS do not have a waiver of immunity under section 101.021(1) [of the civil practice and remedies code] because the harms to PLAINTIFFS were not caused by the negligent use of a motor driven vehicle or motor driven equipment. For the motor vehicle waiver to apply, a nexus must exist between the operation or use of the motor driven vehicle and plaintiff's injuries. . . . PLAINTIFFS have to demonstrate that the DEFENDANT'S use of a motorize[d] vehicle caused the overflow that damaged their property. To date, they have failed to do so. . . . PLAINTIFFS are seeking to recover property damage as a result of a ruptured waste water pipe. . . . PLAINTIFFS[] have filed no pleadings that the City operated any motor vehicle or motorized equipment that provided the nexus for PLAINTIFFS'

8

injuries that would constitute a waiver under the Texas Tort[] Claim[s] Act.
. . .

## B. Taking:  Article I, Section 17 of the Texas Constitution

In addition, in its plea to the jurisdiction, the City also argued that the Plaintiffs

had failed to allege a valid takings claim:

> Even if PLAINTIFFS had proven that DEFENDANT'S actions constitute an intentional act, and that DEFENDANT'S intentional act resulted in a taking, DEFENDANT has offered no proof that the DEFENDANT did so for a public use.  Even if DEFENDANT'S actions did confer some benefit, PLAINTIFFS cannot prove that the DEFENDANT committed any specific act [that] caused an identifiable harm or that the specific property damage was substantially certain to result from an authorized government action. As a result, the PLAINTIFFS' claim of a constitutional taking should be denied by this Court.

## C. Private Nuisance

Finally, with regard to the Plaintiffs' nuisance claims, the City argued that "since

PLAINTIFFS have failed to establish a taking, and since PLAINTIFFS cannot prove that

there is any express waiver of immunity on behalf of DEFENDANT, the nuisance

claim[s] should also be denied by this Court."

### V.  ANALYSIS

## A. Negligence

In its first issue, the City contends that the trial court erred in failing to grant its

plea to the jurisdiction with respect to the Plaintiffs' negligence claim because the

Plaintiffs failed to establish a waiver of immunity from suit under the TTCA.  *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011).

## 1. Applicable Law

In their original petition, the Plaintiffs purport to invoke the statutory waiver of

immunity in the TTCA, which provides as follows:

9

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.*

The TTCA also provides in relevant part as follows:

A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to . . . (2) health and sanitation services; . . . (9) sanitary and storm sewers; . . . (11) waterworks; . . . (19) dams and reservoirs; . . . (32) water and sewer service . . . .

*Id.* § 101.0215(a)(2), (9), (11), (19), (32) (West 2011).

## 2. Discussion

In their original petition, the Plaintiffs allege that the City is liable for damages arising from its exercise of the governmental functions enumerated in the preceding paragraph. *See id.* Therefore, the issue is whether the Plaintiffs' property damages and personal injuries arise from the City's negligent "operation or use of a motor-driven vehicle or motor-driven equipment." *Id.* § 101.021(1)(A).

"Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d

10

208, 211 (Tex. 1989). The Texas Supreme Court has "consistently required a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Dallas Area Rapid Transit*, 104 S.W.3d at 543. "[T]he [vehicle's use or] equipment's use must have actually caused the injury." *Tex. Natural Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). "[T]he operation or use of a motor[-driven] vehicle [or equipment] does not cause injury if it does no more than furnish the condition that makes the injury possible." *Dallas Area Rapid Transit*, 104 S.W.3d at 543.

In its plea to the jurisdiction and on appeal, the City argues that this case should be decided based on *City of Carrollton v. Harlan*, 180 S.W.3d 894, 897 (Tex. App.— Dallas 2005, pet. denied). In *City of Carrollton*, the plaintiff alleged that "her house suffered approximately $8,000 in damages when a service crew from the City was servicing the municipal sewage system near her house." *Id.* at 896. "She allege[d] the system was pressurized by unknown means, causing sewage to blow into her house." *Id.* The trial court held an evidentiary hearing on the City's plea to the jurisdiction:

> At the hearing on the plea to the jurisdiction, the City employee that worked on the sewer line testified that appellee's house is tied into the sewer main by an 8–inch feeder line. When he arrived to work on the back-up, the main line by appellee[']s house was full of sewage due to an obstruction. The obstruction turned out to be concrete and a water valve. The City crew dug out the obstruction. The employee testified he was not aware of the feeder lines being full, and none of the activities of his crew caused the main line or the feeder lines to be full or to back-up into the appellee's house.

*Id.* The trial court denied the City's plea to the jurisdiction. *Id.* The court of appeals reversed, reasoning that the plaintiff had failed to establish that the TTCA's waiver of immunity from suit applied to the case:

11

> Appellee alleged no facts, and presented no evidence at the hearing on the plea to jurisdiction, indicating a motor vehicle or motorized equipment was used by a city employee in a manner that could have caused the damage at issue in this lawsuit. To the contrary, the City employee specifically testified that none of the activities of the City employees caused the sewage to back-up into appellee's house.

*Id.* at 897 (citation omitted).

We think the City's reliance on *City of Carrollton* is misplaced. First, in this case, the trial court did not conduct an evidentiary hearing. Therefore, unlike *City of Carrollton*, there is no evidence that affirmatively establishes that no "motor vehicle or motorized equipment was used by a city employee in a manner that could have caused the damage at issue in this lawsuit." *Id.* Second, as set forth above, the Plaintiffs in this case allege that "motor vehicles and motor equipment were utilized by City employees acting within the scope of their employment." The Plaintiffs further allege that this proximately caused their injuries:

> The flooding of the Property was proximately caused by the negligent operation and/or use of motor vehicles and motor equipment utilized by City employees when 1) initially breaking the sewage line and then attempting on numerous occasions as outlined above to 2) repair the broken raw sewage line and 3) rectify the resultant property damage to the Property.

Therefore, unlike *City of Carrollton*, there are factual allegations that a "motor vehicle or motorized equipment was used by a city employee in a manner that could have caused the damage at issue in this lawsuit." *Id.* Accordingly, we conclude that *City of Carrollton* is not controlling for purposes of this appeal.

In its plea to the jurisdiction, the City also argued that the Plaintiffs' injuries arise from "damage to a waste water main caused by natural shifting of the Earth." However, the City did not offer any evidence to substantiate that contention. Therefore, we look to

12

the Plaintiffs' allegations to determine the trial court's jurisdiction. *See Miranda*, 133 S.W.3d at 226–27.

In their original petition, the Plaintiffs allege three occurrences of flooding that caused them to suffer property damage and personal injuries. The first occurrence allegedly took place on July 15, 2010. The Plaintiffs allege that they discovered a water leak and that the City uncovered "a damaged sewer line," which was the cause of the leak. According to the Plaintiffs, "[t]he City using motor-driven vehicles and or equipment attempted to repair the damaged sewer line[, but] . . . the City's efforts failed." We note that the Plaintiffs do *not* allege that the damage to the sewer line was caused by the use of motor-driven vehicles or equipment. *See Tex. Natural Res. & Conservation Comm'n*, 46 S.W.3d at 869. Instead, they allege that the City attempted to repair the damaged sewer line using such vehicles and equipment. The Plaintiffs do not make any allegations about how the sewer line was initially damaged. Therefore, even taking the Plaintiffs' allegations as true, it is possible that the damage to the sewer line was caused by "natural shifting of the Earth," as the City argued in its plea to the jurisdiction. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. Accordingly, with respect to the first flooding occurrence, we conclude that the Plaintiffs failed to allege a nexus between the City's use of motor-driven vehicles or equipment and their injuries that was sufficient to invoke the waiver of immunity in section 101.021 of the TTCA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021. Therefore, we conclude that the Plaintiffs failed to affirmatively demonstrate the trial court's jurisdiction over this claim because they failed to allege a valid waiver of immunity. *See Dallas Area Rapid Transit*, 104 S.W.3d at 542.

The second occurrence allegedly took place on August 9, 2010. According to the Plaintiffs, the City caused this flooding occurrence in the following manner: "Utilizing motor-driven vehicles and/or equipment, the City negligently caused a raw sewage line to rupture, resulting in the mixing of drinking water with raw sewage as well as causing significant backflow flooding through the sewage line and above ground flooding." In contrast to the first flooding occurrence, the Plaintiffs clearly allege that the City ruptured a raw sewage line by using "motor-driven vehicles and/or equipment," which caused their injuries. *See LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) ("The phrase 'arises from' requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment."). In addition, the Plaintiffs allege that the City used "motor-driven vehicles and/or equipment to construct two dams (mounds of dirt) which resulted in the diversion of the water into the sewage outlet at the Property [and caused] . . . severe drainage to the Property." Based on the foregoing, we conclude that the Plaintiffs have alleged a sufficient nexus between the City's use of motor-driven vehicles and equipment and their injuries to invoke the waiver of immunity in section 101.021 of the TTCA with respect to their negligence claim based on the second flooding occurrence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Therefore, the Plaintiffs met their burden to affirmatively demonstrate the trial court's jurisdiction over this claim by alleging a valid waiver of immunity. *See Dallas Area Rapid Transit*, 104 S.W.3d at 542.

The third occurrence allegedly took place on September 13, 2010. The Plaintiffs allege that "[a]gain, the City recklessly utilized motor vehicles and motor equipment to

attempt to rectify the situation, which again only further exacerbated the property damages the Property sustained." This allegation is vague. It fails to allege how the City's use of motor vehicles or equipment caused the Plaintiffs' injuries. *See id.* at 543. Therefore, with respect to the third flooding occurrence, we conclude that the Plaintiffs failed to allege a nexus between the City's use of motor-driven vehicles or equipment and their injuries that was sufficient to invoke the waiver of immunity in section 101.021 of the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Accordingly, we conclude that the Plaintiffs failed to affirmatively demonstrate the trial court's jurisdiction over this claim because they failed to allege a valid waiver of immunity. *See Dallas Area Rapid Transit*, 104 S.W.3d at 542.

In sum, we conclude that the Plaintiffs' allegations were sufficient to invoke the waiver of immunity in section 101.021 of the TTCA with respect to their negligence claim based on the second occurrence of flooding, but not with respect to the claims based on the first and third occurrences. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021; *Dallas Area Rapid Transit*, 104 S.W.3d at 542. Therefore, the Plaintiffs have affirmatively established that the trial court has jurisdiction over the negligence claim based on the second occurrence, but not the claims based on the first and third occurrences. *See Dallas Area Rapid Transit*, 104 S.W.3d at 542. Furthermore, we conclude that the pleadings and record neither demonstrate nor conclusively negate the trial court's jurisdiction over the claims based on the first and third occurrences. The Texas Supreme Court has instructed that, in circumstances such as these, we should apply the following standard:

> [I]f the pleadings and record neither demonstrate jurisdiction nor conclusively negate it, then in order to obtain dismissal of the plaintiff's

15

claim, the defendant entity has the burden to show either that the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings; or, if such opportunity was not given, that the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. If the governmental entity meets this burden, then the appellate court should dismiss the plaintiff's case.

*Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012).

In this case, the City has not established either ground for dismissing the Plaintiffs' claims. *See id.* Therefore, it is appropriate to allow the Plaintiffs a full and fair opportunity to develop the record and amend their pleadings with respect to their negligence claims based on the first and third occurrences of flooding. *See id.* Accordingly, the City's first issue is overruled.

## B. Taking: Article I, Section 17 of the Texas Constitution

In its second issue, the City contends that the Plaintiffs have failed to plead their takings claims sufficiently to establish jurisdiction.[1] "[S]overeign immunity does not shield the State from a claim based upon a taking under Article I, section 17 of the Texas Constitution, known as the 'takings clause.'" *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). The takings clause mandates that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. "To establish a takings claim under Article I, section 17, the claimant must show that a governmental actor acted intentionally to take or damage property for a public use." *Holland*, 221 S.W.3d at 642. "[D]etermining whether a taking has occurred is a

---

[1] "'Taking,' 'damaging,' and 'destruction' of one's property are three distinct claims arising under Article I, Section 17." *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n.2 (Tex. 2004). "However, the term 'taking' has become used as a shorthand to refer to all three types of claims." *Id.*

16

question of law for the court." *City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 241 (Tex. 2002).

In this case, the Plaintiffs allege that their Property was "taken, damaged, or destroyed" based on the three occurrences of flooding. However, "[w]hen damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged *for public use*.'" *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004). Accordingly, we conclude that the Plaintiffs failed to allege valid takings claims based on the three occurrences of flooding. *See id.*

In addition, the Plaintiffs also allege that their Property was "taken, damaged, or destroyed" based on the following:

> [T]he City threw a rebar on Plaintiffs['s] property, blocked the entry way onto Mr. Aguirre's loading dock which the City subsequently rebuilt in the wrong place, parked a steam roller in front of the gate for several months, had street signs and sand bags in front of both entrances, destroyed the property around the building by tearing out the blacktop and replacing it with dirt, and stored all its construction equipment on the property.

The Plaintiffs further allege that the foregoing was done for "public use."

The City has not addressed these allegations in this interlocutory appeal or asserted that they are not a valid basis for a takings claim. The City also failed to address these allegations in its plea to the jurisdiction. Instead, it addressed only the three occurrences of flooding. Therefore, we conclude that the City has failed to demonstrate that the trial court committed reversible error in denying its plea to the jurisdiction with respect to the takings claim based on the foregoing allegations. *See* TEX. R. APP. P. 44.1(a). Accordingly, we sustain the City's second issue only with

17

respect to the takings claims based on the three occurrences of flooding. In all other respects, the issue is overruled.

## C. Private Nuisance

In its third issue, the City contends that the trial court erred in denying its plea to the jurisdiction with respect to the Plaintiffs' nuisance claims. "In some cases, the Tort Claims Act may waive immunity from certain nuisance claims." *City of Dallas*, 142 S.W.3d at 316. "In other cases, a city may be held liable for a nuisance that rises to the level of a constitutional taking." *Id.*

The City argues that the Plaintiffs "cannot establish a nuisance claim that would have granted the trial court jurisdiction in this case" because the Plaintiffs' "pleadings fail to plead facts that show a taking occurred." However, in deciding the City's first issue, we held that the Plaintiffs' allegations were sufficient to affirmatively demonstrate a waiver of the City's immunity under the TTCA with respect to the negligence claim based on the second occurrence of flooding. For the same reasons stated above, we conclude that, to the extent that the Plaintiffs' nuisance claims are also based on the second occurrence, the Plaintiffs' allegations were sufficient to affirmatively demonstrate a waiver of the City's immunity under the TTCA with respect to the nuisance claims. *See* TEX. R. APP. P. 47.1. Therefore, we conclude that the Plaintiffs met their burden to affirmatively demonstrate the trial court's jurisdiction over these claims by alleging a valid waiver of immunity. *See Dallas Area Rapid Transit*, 104 S.W.3d at 542.[2]

---

[2] We note that on appeal, the City has not addressed whether the Plaintiffs' pleadings establish that its immunity from suit has been waived under the TTCA for purposes of the Plaintiffs' nuisance claims. Therefore, it has failed to establish reversible error with respect to the trial court's denial of its plea to the jurisdiction as it related to these claims. *See* TEX. R. APP. P. 44.1(a).

18

However, we conclude that the pleadings and record neither demonstrate nor conclusively negate the trial court's jurisdiction over the nuisance claims based on the first and third occurrences of flooding. *See Rusk State Hosp.*, 392 S.W.3d at 96. Therefore, it is appropriate to allow the Plaintiffs a full and fair opportunity to develop the record and amend their pleadings with respect to their nuisance claims based on the first and third occurrences of flooding. *See id.* Accordingly, the City's third issue is overruled.

## VI. CONCLUSION

The order of the trial court is affirmed in part and reversed in part, as set forth in this opinion. Specifically, we reverse the trial court's order to the extent that it denied the City's plea to the jurisdiction with respect to the Plaintiffs' takings claims based on the three occurrences of flooding set forth in their original petition. We render a judgment dismissing those claims. In all other respects, the trial court's order is affirmed. We remand the case to the trial court for further proceedings consistent with this opinion.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
19th day of December, 2013.