**CITY OF DALLAS, Petitioner,**

v.

**James JENNINGS and Charlotte Jennings, Respondents.**

**No. 01–1012.**

Supreme Court of Texas.

Argued Sept. 11, 2002.

Decided June 25, 2004.

Robert L. Mchaney, Wash & Thomas, Waco, TX, for Amicus Curiae.

Julie B. Essenburg, Office of City Attorney of City of Dallas, Dallas, TX, for Petitioner.

Charles E. Baruch, Rowiett, Eliot D. Shavin, Dallas, TX, for Respondent.

Justice SCHNEIDER delivered the opinion of the Court.

James and Charlotte Jennings sued the City of Dallas after the City's sewer main backed up and flooded their home with raw sewage. They alleged two claims: unconstitutional taking and nuisance. Specifically, their pleadings asserted that the City's maintenance of the sewer line "constituted an unconstitutional taking, damaging, or destruction of plaintiffs' property for public use without adequate compensation" and that "the pipeline created, operated, and maintained by the City of Dallas constituted a nuisance."

We first determine whether there is legally sufficient evidence to support the plaintiffs' claim that their property was "taken, damaged or destroyed for or applied to public use without adequate compensation being made." Tex. Const. art. I, § 17. Because nothing in the evidence demonstrates either that the City knew the Jenningses' home would be damaged or that the damage was substantially certain to result from authorized government action, we conclude that there was no intentional taking for which the Jenningses are entitled to compensation.

Second, we determine whether the City established, as a matter of law, that it retained governmental immunity from the plaintiffs' nuisance claim. In this case, the plaintiffs did not point us to any statutory waiver of immunity. Consequently, we conclude that the City can only be liable for a nuisance that rises to the level of a constitutional taking under Article I, Section 17 of the Texas Constitution. Because we conclude that the plaintiffs did not establish a constitutional taking in this case, we therefore hold that the City has retained immunity from the plaintiffs' nuisance claim.

## I. Background

In 1993, the Wastewater Collection Division of the City of Dallas's Water Utilities Department dislodged a clogged sewer main. The dislodged material caused another sewage backup and resulted in a raw sewage flood in James and Charlotte Jennings's home.

The Jenningses sued the City, claiming a nuisance and an unconstitutional taking.

They did not allege that the City was negligent in its administration of the sewer system; instead, they argued that occasional flooding damage is inherent in the operation of any sewer system, and that the City should bear the cost of such damage.

Both parties moved for summary judgment. The plaintiffs' motion for partial summary judgment requested that the trial court find that the sewage backup constituted a nuisance per se under the Health and Safety Code. See Tex.Health & Safety Code § 341.011 (defining exposed raw sewage as a "public health nuisance"). The City moved for summary judgment based on both governmental immunity and Tex.R. Civ. P. 166(a)(i). The trial court denied the plaintiffs' motion and granted the City's motion.

The Jenningses appealed. First, the court of appeals concluded that the plaintiffs' summary-judgment evidence—an affidavit from a regional Director of Environmental & Consumer Health for the Texas Department of Health stating that the sewage discharged in their home was a potential instrument of disease transmission into that home—established a nuisance per se under the Health and Safety Code. Thus, according to the court of appeals, the burden shifted to the City to produce evidence precluding summary judgment. Because the City did not produce evidence contesting that discharged sewage constituted a nuisance, the court of appeals held that the trial court should have granted the plaintiffs' motion for partial summary judgment. 138 S.W.3d 366.[1]

---

1. The City argues that the court of appeals improperly rendered on the trial court's partial summary judgment ruling because that ruling was interlocutory. However, once the trial court ruled on the City's summary judgment motion, which disposed of all remaining claims, the order became a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (2001) ("A judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final, regardless of its language.").

With regard to the City's summary judgment motion, the court of appeals concluded that the plaintiffs' summary judgment rebuttal evidence raised a fact issue under the nuisance and takings claims. According to the court of appeals, the plaintiffs' evidence that flooding is "inherent in the operation of the pipeline," regardless of negligence, precluded a conclusion that the flooding resulted only from the City's negligence. 138 S.W.3d at 366. Similarly, the court of appeals concluded that the plaintiffs' "evidence that sewage backups are inherent within the operation of sewers," also raised a fact issue on their intentional-taking claim. *Id.* The court of appeals therefore reversed the trial court's grant of summary judgment on the nuisance and taking claims. *Id.*

We granted the City's petition to decide whether the court of appeals erred in reversing the trial court's grant of summary judgment in the City's favor.

## II. Constitutional Taking

First, we determine whether the plaintiffs' property has been "taken, damaged, or destroyed for or applied to public use without adequate compensation being made" in contravention of Article I, Section 17 of the Texas Constitution.[2]

On this point, the parties agree that only an intentional act can give rise to such a taking. They disagree, however, as to what type of intent is needed. The Jenningses argue that it is only the act causing the damage that must be intentional, citing *City of Tyler v. Likes,* 962 S.W.2d 489, 504–05 (Tex.1997) ("A person's property may be 'taken, damaged or destroyed' . . .

if an injury results from either the construction of public works or their subsequent maintenance and operation."). Therefore, they assert that because the City intended to unclog a backup, and because this action resulted in the sewage flood, the City should be liable for the damage caused by the flood.

In contrast, the City contends that the relevant question is whether the government intended to damage the property, not whether it merely intended to take an action that accidentally resulted in such damage. The City also finds support for its position in *Likes. Likes,* 962 S.W.2d at 505 ("[M]ere negligence which eventually contributes to the destruction of property is not a taking."). The City argues that the trial court correctly granted summary judgment because there was no evidence that the City intended to flood the Jenningses' home.

■■■ We do not believe that either position presents the correct standard. We do not agree with the plaintiffs' contention that any intentional act can give rise to liability for an intentional taking. Such a standard would hold the government entity "to a higher liability than a private person engaging in the same acts." *Houston v. Renault, Inc.,* 431 S.W.2d 322, 325 (Tex.1968). Such a requirement would also ignore the predicate of Article I, Section 17: that the damage be "for or applied to public use." When damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be "taken or damaged *for public use.*" *Texas Highway Dep't v. Weber,* 147 Tex. 628, 219 S.W.2d

---

**2.** "Taking," "damaging," and "destruction" of one's property are three distinct claims arising under Article I, Section 17. *Steele v. City of Houston,* 603 S.W.2d 786, 789–791 (Tex.1980) However, the term "taking" has become used as a shorthand to refer to all

three types of claims. *See, e.g.,* Tex. Gov'T CODE § 2007.002(5). Here, although we similarly use the phrase "takings claim," we are specifically addressing the damage to the Jenningses' property.

70, 71 (1949) (emphasis added); *Steele v. City of Houston,* 603 S.W.2d 786, 791–92 (Tex.1980).

[3] Nor do we believe, however, that the City must necessarily intend to cause the damage; if the government knows that specific damage is substantially certain to result from its conduct, then takings liability may arise even when the government did not particularly desire the property to be damaged. Our earlier jurisprudence has left open the possibility that liability may be predicated on damage that is "necessarily an incident to, or necessarily a consequential result of, the act" of the governmental entity. *Weber,* 219 S.W.2d at 71; *Dallas County Flood Control Dist. v. Benson,* 157 Tex. 617, 306 S.W.2d 350, 351 (1957); *see also Kerr v. Texas Dept. of Transp.,* 45 S.W.3d 248, 250 (Tex.App.–Houston [1st Dist.] 2001, no pet.). There may well be times when a governmental entity is aware that its action will necessarily cause physical damage to certain private property, and yet determines that the benefit to the public outweighs the harm caused to that property. In such a situation, the property may be "damaged for public use." *Weber,* 219 S.W.2d at 71.

█ We therefore hold that when a governmental entity physically damages private property in order to confer a public benefit, that entity may be liable under Article I, Section 17 if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action — that is, that the damage is 'necessarily an incident to, or necessarily a consequential result of' the government's action. *Weber,* 219 S.W.2d at 71; *Tarrant Reg'l Water Dist. v. Gragg,* 43 S.W.3d 609 (Tex.2004). This definition comports with the definition of "intent" in the Restatement of Torts,

which we have applied in other contexts. Restatement (Second) of Torts § 8A (1965) ("Intent" means "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."); *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex.1993); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 412 (Tex. 1989).

This standard also comports with the takings jurisprudence of states with similar constitutional provisions. The Supreme Court of New Mexico, for example, has adopted a nearly identical standard:

[N]egligence in assessing a constitutional claim under the "just compensation" clause for property damage is irrelevant, but from this we think *it does not follow that something less than negligence will suffice* ... For an act to give rise to a [takings claim], we think that the act must at least be one in which the risk of damage ... is so obvious that its incurrence amounts to the deliberate infliction of harm for the purpose of carrying out the governmental projects.

Intentionally causing the damage would clearly fall within this standard; so also would acting with knowledge that the damage was substantially certain to result from the conduct.

*Electro–Jet Tool Mfg. Co. v. City of Albuquerque,* 114 N.M. 676, 845 P.2d 770, 777 (1992). Other states have adopted similar tests. *See Robinson v. City of Ashdown,* 301 Ark. 226, 783 S.W.2d 53, 56 (1990) (holding that repeated sewage flooding could give rise to a takings claim and noting that "when one knows that an invasion of another's interest in the use and enjoyment of land is substantially certain to result from one's conduct, the invasion is intentional... Here the invasion continued long after the city was put on notice of it").

In this case, there is no evidence that the City knew, when it unclogged the sewer line, that any flooding damage would occur. Nor is there evidence that the act of unclogging was substantially certain to lead to such damage; the record reflects that unclogging backups does not ordinarily cause residential flooding, and the plaintiffs themselves allege only that unclogging "sometimes" results in such damage. Because there was no evidence that the City possessed the knowledge required to establish an intentional taking, the trial court correctly granted the City's summary judgment motion, and the court of appeals therefore erred in reversing the trial court.

### III. Governmental Immunity From Nuisance Claims

We next consider whether the City conclusively established governmental immunity from the Jenningses' nuisance claim. A city is immune from liability for its governmental actions unless that immunity is waived. *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). Operation of a sewer system is a governmental function. Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a)(32). Therefore, the City will not be liable for damage resulting from its operation of the sewer system without a clear waiver of governmental immunity.

Plaintiffs contend, however, that nuisance actions are an exception to the general rule of immunity. They cite our decision in *Gotcher v. City of Farmersville* for the proposition that governmental entities are not immune from nuisance claims. 137 Tex. 12, 151 S.W.2d 565 (1941). In *Gotcher,* parents sued the City of Farmersville after their child drowned in a city-owned cesspool; the parents alleged that the cesspool constituted an attractive nuisance. *Id.* We held that the City was not liable because "the child was not upon the premises because of any attraction or allurement of the cesspool." *Id.* at 567. Nevertheless, we noted in dicta that "[t]here are authorities which hold that a municipality is liable for damages caused by maintenance of a nuisance, even though the municipality in maintaining the same is engaged in the exercise of a governmental function," and we concluded that "in order to create liability for the maintenance of a nuisance, the nuisance must in some way constitute an unlawful invasion of the rights of others." *Id.* at 566.

Plaintiffs' reliance on *Gotcher* is misplaced, however; that case did not create an exception to the general rule of municipal immunity. The court of appeals opinion affirmed by this Court in *Gotcher* made clear that governmental liability for nuisance arose from Article I, Section 17 of the Texas Constitution. *Gotcher v. City of Farmersville,* 139 S.W.2d 361, 362-363 (Tex.Civ.App.—Dallas 1940, writ granted) *aff'd* 137 Tex. 12, 151 S.W.2d 565 (1941). The court of appeals explicitly noted that while cities may be "held liable for depreciation in value of land and for physical discomfort resulting from nuisances in the exercise of governmental functions [and] in the operation of sewerage plants," liability in such cases is "bottomed on the inhibition of the Constitution, both Federal and State, that property cannot be appropriated without due compensation, even though appropriated in the exercise of governmental functions." *Id.*

The Dallas Court of Appeals has similarly concluded that "the claimed 'nuisance' exception to the rule of municipal immunity to tort liability" exists only when "the immunity is expressly waived, as by the Tort Claims Act, and by article I, section 17 of the Texas Constitution, which provides that no person's property shall be taken, damaged or destroyed for a public purpose without adequate compensation."

*Bragg v. City of Dallas,* 605 S.W.2d 669, 671 (Tex.Civ.App.–Dallas 1980, no writ) (citation omitted).

█ We agree that nuisance liability arises only when governmental immunity is clearly and unambiguously waived. In some cases, the Tort Claims Act may waive immunity from certain nuisance claims. *See* Tex. Civ. Prac. & Rem.Code § 101.021. In other cases, a city may be held liable for a nuisance that rises to the level of a constitutional taking. *See City of Abilene v. Downs,* 367 S.W.2d 153, 159 (Tex.1963) ("[I]f the construction and operation of the plant results in a nuisance, such acts of the municipality constitute a damaging or taking of property under Section 17 of Article I of the Texas Constitution.").

█ In this case, we have already concluded that the City lacked the requisite intent to be held liable under Article I, Section 17 of the Texas Constitution. Because the plaintiffs do not assert any other potential waiver of immunity, we conclude that the City is immune from the plaintiffs' nuisance claim.

## IV. Nuisance Per Se

█ Our conclusion that the City is immune from the plaintiffs' nuisance claim also disposes of the plaintiffs' argument that they established a "nuisance per se"[3] under section 341.011 of the Texas Health and Safety Code. This provision states that "sewage, human excreta, wastewater, garbage, or other organic wastes deposited, stored, discharged, or exposed in such a way as to be a potential instrument or medium in disease transmission to a person or between persons" is "a public health

**3.** A nuisance per se is "an act, occupation, or structure that is a nuisance at all times, under any circumstances, and in any location." *Maranatha Temple, Inc. v. Enter. Prods. Co.,* 893 S.W.2d 92, 100 (Tex.App.–Houston [1st

nuisance." Tex. Health & Safety Code § 341.011.

█ Nothing in the statute indicates a legislative intent to waive governmental immunity for nuisance claims; rather, the statute merely allows local governments to summarily abate such conditions. Therefore, we need not decide whether the provisions of this statute apply to the City's maintenance and operation of its sewer system. For the purpose of governmental immunity, it makes no difference whether the condition is characterized as a nuisance in fact or a nuisance per se. In either event, the City cannot be held liable in the absence of a clear and unambiguous waiver of immunity.

## V. Conclusion

For the foregoing reasons, we hold that the court of appeals erred in reversing the trial court's grant of summary judgment in favor of the City. Accordingly, we reverse the judgment of the court of appeals and render judgment that the Jenningses take nothing.

Dist.] 1994, writ denied). A nuisance in fact is "an act, occupation, or structure that becomes a nuisance by reason of its circumstances or surroundings." *Id.*