

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00355-CV

Forrest M. **MIMS**, Minnie Mims, Ray Reininger, Deborah Reininger, Glenn Thompson, Annette Thompson, Blake C. Brock, and Annette Dannelly-Silva,
Appellants

v.

**CITY OF SEGUIN**,
Appellee

From the 274th Judicial District Court, Guadalupe County, Texas
Trial Court Nos. 17-1304-CV-B, 17-1305-CV-C, 17-1306-CV-A,
17-1492-CV-A & 17-1306-CV-A
Honorable Gary L. Steel, Judge Presiding

Opinion by:      Rebeca C. Martinez, Chief Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: July 21, 2021

REVERSED AND REMANDED

Appellants ("the Homeowners") own homes in the City of Seguin whose properties were damaged by flooding from the City's sewage project. The Homeowners appeal the trial court's judgment granting the City's plea to the jurisdiction and dismissing their inverse condemnation and nuisance claims. We reverse the trial court's order and remand for further proceedings.

**BACKGROUND**

The City constructed a sewer project near the Oak Village North neighborhood in Seguin. A sewer trench was built as part of the project and, due to the uniform-sized gravel, the sewer trench channeled groundwater to the Homeowners' properties, causing significant damage. The Homeowners sued the City in June of 2017. The Homeowners alleged the following facts:

> Defendant City participated in the design, construction, installation, and operation of the City of Seguin's Oak Village North Sanitary Sewer System. The result was a sewer trench that doubled as a 2.5-mile French drain which erupted as artesian springs at five points in and adjacent to the Oak Village North subdivision. The spring at the east end of Twin Oak Road adjacent to the [Homeowners'] mailbox emitted 8,600 gallons/day of surface water that was diverted by a pump and a 400-feet hose and 24,800 gallons/day that flowed over and under the [Homeowners'] field and into half an acre of their woods. The result was total blocking of the [Homeowners'] back-septic leach field, intermittent blocking of their front leach field and creation of a swamp in their woods that has killed more than 60 trees to date. The [Homeowners] have had to spend many nights in hotels. The [Homeowners'] septic system is ruined, their property is essentially uninhabitable, and they are experiencing cracking and foundation problems.

> . . . Defendant City received numerous specific warnings about the potential groundwater problems from its project. Many of those warnings came from Plaintiff Forrest Mims, who is a highly respected and recognized scientist and environmental expert. . . . Additionally, the City clearly knew that its project was causing the identifiable harm as it intentionally excavated a trench into [Homeowners'] gully, which has blocked access to the north side of their wildlife management site, caused major erosion, and blocked access to the most ecologically sensitive portion of [Homeowners'] land along the Geronimo Creek. In fact, the City even passed an "Emergency Resolution" for same due to the known groundwater seepage onto Plaintiffs' property. Indeed, the City's design engineers, TRC Engineers, Inc., a former Defendant in this cause, sent correspondence to the City dated January 9, 2012 – before construction – which put the City on notice of the potential for groundwater seepage as actually occurred in this case. The gravel actually used in the project did just that. In fact, TRC admitted as much in a January 18, 2017 letter to the City. Plaintiffs' expert, Tom Wendorf, P.E., the former City of San Antonio Director of Public Works, and a Certified Flood Plain Manager, believes that the use of uniform gravel in the trench caused the French drain that has flooded the [Homeowners'] property. Thus, there can be no doubt that the City knew – or was substantially certain – that identifiable harm was occurring in this part of Oak Village North due to its sewer project; thus, its objective intent is conclusively established.

The Homeowners alleged these facts gave rise to claims for inverse condemnation and nuisance under Article I, section 17 of the Texas Constitution. *See* TEX. CONST. art. I, § 17.

After filing an answer, the City filed a plea to the jurisdiction. The City argued the Homeowners' allegations failed to allege sufficient facts showing a waiver of governmental immunity because the alleged facts, if true, did not amount to inverse condemnation or actionable nuisance. The parties agreed that the trial court would hear the plea by submission. The trial court signed a judgment granting the City's plea and dismissing the Homeowners' claims with prejudice. At the Homeowners' request, the trial court made findings of fact and conclusions of law. The Homeowners also filed a motion for new trial, which was overruled by operation of law. The trial court consolidated the Homeowners' various cases for purposes of this appeal, and the Homeowners timely appealed.

## APPLICABLE LAW & STANDARD OF REVIEW

Governmental immunity protects political subdivisions from suits and defeats a trial court's subject matter jurisdiction. *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 457 (Tex. 2020). Governmental immunity does not extend to inverse condemnation and nuisance claims based on a city's taking of private property, whether outright or by damage or destruction, because the Texas Constitution prohibits such non-consensual takings of private property for public use without adequate compensation. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980). When, as here, an inverse condemnation claim and nuisance claim are both predicated on an alleged taking, our analysis for both claims turns on whether the government's conduct amounts to a taking of property for which governmental immunity does not apply. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004).

Because the existence of governmental immunity defeats a trial court's subject matter jurisdiction, governmental immunity is properly asserted by a plea to the jurisdiction. *See State v.*

*Holland*, 221 S.W.3d 639, 642 (Tex. 2007). "A plea questioning the trial court's jurisdiction raises a question of law that we review *de novo*." *Id.* "We focus first on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *Id.* "We construe the pleadings liberally, looking to the pleader's intent." *Id.* at 643. We take all factual assertions as true. *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Holland*, 221 S.W.3d at 643. "In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts." *Id.* "A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." *Id.*

## ANALYSIS

The City did not challenge the existence of jurisdictional facts by submitting evidence to negate the allegations in the Homeowners' pleadings. Instead, the City argued the Homeowners' pleadings failed to allege sufficient facts that, if true, would establish the City's conduct amounted to a taking under article I, section 17 of the Texas Constitution. *See* TEX. CONST. art. I, § 17. The trial court granted the plea to the jurisdiction without providing the Homeowners an opportunity to cure any deficiencies. Thus, the trial court's order was proper only if the Homeowners' pleadings "affirmatively demonstrate[d] an incurable defect" that established the City's conduct did not amount to a taking under the Texas Constitution. *See Holland*, 221 S.W.3d at 643.

When the pleadings allege property damage, for the damage to be a taking under the Texas Constitution, the governmental entity must have physically damaged private property to confer a public benefit and "(1) know[] that a specific act is causing identifiable harm; or (2) know[] that the specific property damage is substantially certain to result from an authorized government

action — that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action." *Jennings*, 142 S.W.3d at 314 (quotation marks omitted). "[I]f the government knows that specific damage is substantially certain to result from its conduct, then takings liability may arise even when the government did not particularly desire the property to be damaged." *Id.* "There may well be times when a governmental entity is aware that its action will necessarily cause physical damage to certain private property, and yet determines that the benefit to the public outweighs the harm caused to that property." *Id.* "In such a situation, the property may be damaged for public use." *Id.* (quotation marks omitted).

The City's plea argued the Homeowners "fail[ed] to allege that the City knew that specific property damage was substantially certain to result or necessarily consequential from its installation of the sewer system. . . . Therefore, [Homeowners] have not adequately plead[ed] a takings claim that would waive the City's governmental immunity and this claim must be dismissed." The City's plea also argued the alleged property damage was not incurred "for the public benefit, and, as such, there is no taking for a public use. . . . [Homeowners] allege that as a result of the installation of the sewer system, five artesian springs erupted in and adjacent to the Oak Village North subdivision. These springs then caused flooding, damaging [Homeowners'] property. Because the springs were not an intended component of the sewer system . . . there is no public benefit."

Initially, the City's plea did not argue that the Homeowners' pleadings alleged facts "affirmatively demonstrat[ing] an incurable defect" that established the City's conduct was not a taking under the Texas Constitution. *See Holland*, 221 S.W.3d at 643. Instead, the City's plea merely argued pleading deficiencies. Furthermore, the Homeowners pled that the City is a governmental entity and the City's sewer project, including the sewer trench, was for a public benefit. The property damage was flooding, and the flooding was caused by: (1) the sewer trench

doubling as a French drain and directing excess water to the Homeowners' properties; and (2) eruptions in the French drain at five points. The Homeowners alleged "there can be no doubt that the City knew – or was substantially certain – that identifiable harm was occurring in this part of Oak Village North due to its sewer project." *See Jennings*, 142 S.W.3d at 314 (recognizing a taking when the City "knows that a specific act is causing identifiable harm" or "knows that the specific property damage is substantially certain to result from an authorized government action"). The Homeowners alleged facts supporting the City's knowledge of groundwater flooding: (1) one of the Homeowners who is an environmental expert, Forrest Mimms, informed the City of the groundwater issues; (2) the City passed an "Emergency Resolution" acknowledging the groundwater seepage; (3) the City's engineering firm, TRC Engineers, notified the City before construction of the potential for groundwater seepage; and (4) the City was aware that the trench would send all of the groundwater in the direction of the Homeowners' properties. The allegations, liberally construed, show the City's awareness that, with substantial certainty, its actions would cause groundwater damage to the Homeowners' properties. The allegations, taken as true and liberally construed, show the City weighed the benefits of its sewer project, including the installation of the sewer trench, against the likely harms caused to the properties and determined the benefit to the public outweighed the harm caused to that property. *See id.* This supports a conclusion that the damage to the Homeowners' properties from the sewer project was for public use. *See id.*

On appeal, the City again argues that the Homeowners' pleadings are deficient, but does not argue that the Homeowners' pleadings affirmatively demonstrate incurable defects establishing the trial court lacks subject matter jurisdiction. The City cites *San Antonio Water System v. Overby*, but *Overby* is distinguishable for at least two reasons. 429 S.W.3d 716, 721 (Tex. App.—San Antonio 2014, no pet.). The first reason, which is procedural, is that the

jurisdictional facts in *Overby* were challenged with evidence; thus, the *Overby* plaintiffs' pleadings were not accepted as true in overcoming the plea to the jurisdiction. *See id.* Here, the City did not seek to negate the existence of jurisdictional facts alleged by the Homeowners, which we must take as true. The second reason, which is substantive, is that in *Overby*, the potential for flooding was the general possibility of heavy rain. *See id.* Here, however, the Homeowners alleged specific facts that the City actually knew of the groundwater seepage and the directional flow of groundwater through the sewer trench to the Homeowners' properties.

The City also relies on *Harris County Flood Control District v. Kerr*, for the proposition that the Homeowners failed to allege that the City knew their specific properties were being affected. 499 S.W.3d 793, 799 (Tex. 2016). In *Kerr*, the supreme court noted that "to form the requisite intent, the government ordinarily knows which property it is taking." *Id.* at 800 "We have not recognized liability where the government only knows that someday, somewhere, its performance of a general governmental function, such as granting permits or approving plats, will result in damage to some unspecified parcel of land within its jurisdiction." *Id.* Here, however, the Homeowners alleged the City "intentionally excavated a trench into [Homeowners'] gully" and their "gully continues to erode and continues to have patches of apparent detergent suds, which can also be seen near the outlet of the emergency French drain along the new creek that flows to [the Homeowners'] pond." They further alleged one of the springs "adjacent to the [Homeowners'] mailbox emitted 8,600 gallons/day of surface water that was diverted by a pump and a 400-[foot] hose and 24,800 gallons/day that flowed over and under the [Homeowners'] field and into half an acre of their woods." These allegations are sufficient to meet *Kerr*'s specificity requirement and,

to the extent they are deficient, they do not affirmatively negate the trial court's subject matter jurisdiction and the Homeowners were not given an opportunity to cure any deficiency. *See id.*[1]

Lastly, the City argues the Homeowners' pleading deficiencies are incurable because, if they were curable, the Homeowners would have cured them already. But when faced with a plea to the jurisdiction, a plaintiff may stand on the pleadings "unless and until a court determines that the plea is meritorious." *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). If the trial court determines the plea is meritorious and the pleadings are deficient, the plaintiff must *then* be given a reasonable opportunity to amend the pleadings to cure the jurisdictional defects. *Id.* Whether pleadings defects are incurable, in this context, generally turns on whether the pleadings "state facts affirmatively negating its ability to make a takings claims." *City of Houston v. Guthrie*, 332 S.W.3d 578, 590 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Here, the Homeowners' pleadings do not allege facts to affirmatively negate a takings claim.

## CONCLUSION

The City's plea challenged only the sufficiency of the Homeowners' pleadings and did not present evidence to negate the existence of the jurisdictional facts alleged by the Homeowners. The trial court did not follow the procedure to allow the Homeowners to cure any deficiencies under *Koseoglu* and granted the plea outright. *See Koseoglu*, 233 S.W.3d at 839. Under these circumstances, our standard of review permits us to affirm only if the Homeowners' pleadings affirmatively and incurably negated the trial court's subject matter jurisdiction. The Homeowners' pleadings do not affirmatively and incurably negate the trial court's subject matter jurisdiction.

---

[1] The City further argues the springs were accidental, but the Homeowners did not plead the springs were accidental. Again, "if the government knows that specific damage is substantially certain to result from its conduct, then takings liability may arise even when the government did not particularly desire the property to be damaged." *Jennings*, 142 S.W.3d at 314 (quotation marks omitted). The City also argues the Homeowners rely on actions the City took after the property damage occurred, but we are unable to assess the merits of this point because the Homeowners' pleadings do not specify many dates or establish a clear timeline of events.

When taken as true and liberally construed, the facts alleged by the Homeowners establish the trial court's jurisdiction. We therefore reverse the trial court's judgment and remand for further proceedings.

Rebeca C. Martinez, Chief Justice