

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00133-CV

_____

JACOB ANTHONY WEBB, Appellant

V.

CITY OF FORT WORTH, Appellee

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-316897-20

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

## I. Introduction

This is a constitutional-taking-and-nuisance suit involving governmental immunity as it relates to a city's responsibility for the escape of raw sewage into a home. *See, e.g.*, *City of Dall. v. Jennings*, 142 S.W.3d 310, 312 (Tex. 2004); *City of Henrietta v. Smithson*, No. 02-20-00380-CV, 2021 WL 4472629, at *1 (Tex. App.—Fort Worth Sept. 30, 2021, no pet.) (mem. op.). Appellant Jacob Anthony Webb, a Fort Worth homeowner, sued Appellee City of Fort Worth after his home flooded with raw sewage.[1] Webb sought damages for a taking under the Texas Constitution, for common law nuisance and statutory nuisance per se, and for negligence, as well as a declaratory judgment. The City filed a plea to the jurisdiction, as well as traditional and no-evidence motions for summary judgment, all of which the trial court granted before dismissing Webb's claims against the City with prejudice.

In six issues, Webb argues that the trial court abused its discretion by refusing to file findings of fact and conclusions of law and by failing to hold an evidentiary hearing on the City's plea to the jurisdiction and that the trial court erred by granting the City's plea to the jurisdiction and summary-judgment motions, as well as by dismissing his suit with prejudice. Because Webb was not entitled to findings and

---

[1]Webb also alleged that the City's remediation contractor failed to remove all contaminated drywall, cabinetry, and flooring and instead caused additional damage to his home during the work, and he sued his home's insurer as well. The insurer was subsequently nonsuited.

conclusions or an evidentiary hearing on the plea to the jurisdiction and because the trial court did not err by granting the City's plea to the jurisdiction, we affirm without reaching his two summary-judgment issues. *See* Tex. R. App. P. 47.1.

## II. Governmental Immunity

We begin our review with Webb's third and fourth issues, in which he argues that the trial court erred by granting the City's plea to the jurisdiction based on governmental immunity and that the trial court erred by dismissing his claims with prejudice.

Governmental immunity protects cities—political subdivisions of the State— when they perform governmental functions. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 240 (Tex. App.—Fort Worth 2018, pet. denied). Governmental immunity deprives a trial court of subject matter jurisdiction and generally protects municipalities, among others, from suit unless immunity has been waived by the constitution or by a state law. *Smithson*, 2021 WL 4472629, at *2. We review a question of subject matter jurisdiction de novo. *Id.*

An immunity claim is properly raised in a plea to the jurisdiction. *Id.* When a plea relies on evidence to challenge whether facts exist to support jurisdiction, the standard of review mirrors that of a traditional summary judgment. *Id.* If the evidence creates a fact issue as to jurisdiction, the trial court cannot grant the plea, and the factfinder will resolve the fact issue, but if the relevant evidence is undisputed or fails to raise a fact question as to jurisdiction, then the trial court will rule on the plea as a

3

matter of law. *Id.* In determining whether a material fact issue exists, as in the summary-judgment context, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

Regarding dismissal, if the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *City of Westworth Vill.*, 558 S.W.3d at 239–40. The claim may be dismissed with prejudice when the plaintiff's pleadings conclusively negate the existence of subject matter jurisdiction. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 489 (Tex. 2018); *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (op. on reh'g) (explaining that if a dismissal does not implicate the merits of the plaintiff's claims, then they must be dismissed without prejudice).

## A. Applicable Law

Both parties refer us to *City of Dallas v. Jennings.* In *Jennings*, homeowners sued the City of Dallas for an unconstitutional taking and for nuisance after the City's sewer main backed up and flooded their home with raw sewage. 142 S.W.3d at 311. The City's utilities department had dislodged material from a clogged sewer main, and the dislodged material caused a new sewer backup that led to the home's flooding. *Id.* at 312. The homeowners did not allege that the City had been negligent in its sewer

4

system administration; instead, they argued—as Webb does here[2]—that occasional flooding damage is inherent in any sewer-system operation and that the City should bear the cost of such damage. *Id.* Both parties moved for summary judgment. *Id.*

The homeowners asked the trial court to find that the sewer backup constituted a nuisance per se under Texas Health and Safety Code Section 341.011.[3] *Id.* The City raised governmental immunity and no-evidence grounds. *Id.* The parties agreed that only an intentional act can give rise to a constitutional taking, but they disputed where the line should be drawn on intent. *Id.* at 313. The homeowners argued that the act causing the damage (clearing the sewer line) was the only intentional act required. *Id.* The City countered that the relevant question was whether it had intended to damage the property, not whether it merely intended to take an action that accidentally resulted in such damage, and that there was no evidence that it had intended to flood the home. *Id.* The supreme court determined that neither position was entirely correct—the homeowners' "any intentional act" standard ignored Article I, Section

---

[2]Webb alleged in his second supplemental petition that "[i]t is inherent in the nature of a gravity feed [sewer] system that from time to time the substances [transported by the system] congeal and form a blockage which can and does result in backups of raw, noxious sewage into private residences serviced by the system."

[3]Health and Safety Code Section 341.011 defines "public health nuisance" to include "sewage . . . deposited, stored, discharged, or exposed in such a way as to be a potential instrument or medium in disease transmission to a person or between persons." Tex. Health & Safety Code Ann. § 341.011(5).

5

17's taking-for-public-use requirement[4] and imposed a higher liability standard than the one that applied to private persons, while the City's standard ignored that takings liability could arise when the government knew that specific damage was substantially certain to result from its conduct even if it did not particularly want the property to be damaged. *Id.* at 313–14.

The court held that when a governmental entity physically damages private property in order to confer a public benefit, the entity may be liable under Article I, Section 17 if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action. *Id.* at 314. Because nothing in the evidence showed that the City knew that the home would be damaged or that the damage was substantially certain to result when it unclogged the sewer line, there was no intentional taking under Article I, Section 17 of the Texas Constitution. *Id.* at 312, 315.

The court further observed that sewer-system operation is a governmental function for which the City would not be liable for damage under nuisance and nuisance per se theories without a clear and unambiguous waiver of governmental

[4]Article I, Section 17 of the Texas Constitution states that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:" (1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use by the State, one of its political subdivisions, or the public at large or an entity granted the power of eminent domain under law, or (2) the elimination of urban blight on a particular parcel of property. Tex. Const. art. I, § 17(a).

6

immunity under either the Texas Tort Claims Act (TTCA)[5] or Article I, Section 17. *Id.* at 315–16 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(32)).[6] When the homeowners did not direct the court to a statutory waiver of immunity, the City could only be liable for nuisance if the homeowners established that it rose to the level of a constitutional taking under Article I, Section 17. *Id.* at 312, 316. Because the homeowners failed to do so, the City retained immunity from the nuisance claim. *Id.*

We recently considered the same issue on slightly different facts in *Smithson.* 2021 WL 4472629, at *1. When Smithson returned home from an overnight trip on October 6, she found her home's floors covered in sewage and filed a claim, which the City denied. *Id.* After Smithson sued for negligence, the City filed a plea to the jurisdiction, asserting immunity, which the trial court denied after a hearing during which it considered both a deposition of and an affidavit by the City's director of public works. *Id.* at *1–3.

---

[5]Under the TTCA, a governmental unit is liable for property damage proximately caused by the wrongful act or omission or negligence of an employee acting within his scope of employment if the property damage "arises from the operation or use of a motor-driven vehicle or motor-driven equipment" and "the employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1); *see id.* § 101.0215(a)(32); *see also Jennings*, 142 S.W.3d at 315 (stating that sewer-system operation is a governmental function and that a city will not be liable for damage resulting from such operation "without a clear waiver of governmental immunity").

[6]In *Jennings*, the court observed that nothing in Section 341.011 indicated a legislative intent to waive governmental immunity for nuisance claims; "rather, the statute merely allows local governments to summarily abate such conditions." 142 S.W.3d at 316.

The City relied on the affidavit, in which the director stated that the sewer main cleared after a jetter—a piece of motor-driven equipment—removed a blockage on October 4, opined that the jetter did not cause the sewer backup into Smithson's home two days later, and contended that if the jetter had caused the issue, the backup would have occurred while the jetter was "pressurizing the line." *Id.* at *1, *3. The director averred that there had been no work orders for the jetter's use on October 5, 6, or 7, but he acknowledged that all of the jetter work orders for that year had been destroyed at the end of the City's fiscal year. *Id.* at *3. He attached his memorandum of the since-destroyed work orders showing that a sewer blockage on October 4 was cleared at 6 p.m., that a sewer blockage on October 8 was cleared at 9 p.m., and that the sewer main was replaced with new PVC pipe on October 10. *Id.* The affidavit did not explain why the backup would have had to have occurred during the jetter's use and did not address the issue of whether the broken sewer main under the street outside Smithson's house played a role in the backup. *Id.* at *1, *3.

Smithson relied on the director's deposition testimony, in which he stated that on October 4, he saw water on the street, which indicated to him that the sewer main was experiencing a blockage and that the sewer main's clay pipes likely needed to be replaced. *Id.* at *4. A public works employee used a jetter to clear the blockage on October 4, working upstream from the blockage and using the jetter to shoot water downstream. *Id.* Smithson's service line was upstream of the blockage, where "a lot" of water in the sewer main would flow until the jetter cleared the blockage. *Id.* The

8

director acknowledged in his deposition that the backup into Smithson's home could have come from the sewer main, but that acknowledgment was not evidence that it did so because of the City's jetter use. *Id.* On October 8, he confirmed that the pipes were cracked after the sewer main experienced another blockage and water once again seeped up onto the street. *Id.* A public works employee used the jetter to clear the blockage, and on October 10, the City replaced seventy feet of the sewer main. *Id.*

On appeal, the City argued that there was no nexus between the jetter's use and the sewer backup that damaged Smithson's home. *Id.* at *1. The damage from a city's use of motor-driven equipment must "arise from" the equipment's use, requiring a nexus between the negligently-caused injury and the operation of the equipment. *Id.* at *3 (citing *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 302, 305 (Tex. 2019)). That is, the damage claim must be based on more than mere involvement of property— instead, the use or operation of the equipment must have actually caused the injury. *Id.*

Smithson's theory was that the City's use of the jetter in the broken sewer main outside of her home caused the sewer backup into her house. *Id.* at *3. She argued that a reasonable inference could be made that the extra water pumped into the sewer by the jetter eventually found its way into her service line and into her home. *Id.* at *4. We observed that neither the deposition testimony nor the affidavit that was executed after the deposition "established that the jetter's use in the sewer main's broken pipes could *not* have caused the sewer backup in Smithson's service line," and that the City

9

did not supplement its plea with an additional affidavit from the director or from an outside expert to negate Smithson's theory. *Id.* (emphasis added).

Taking as true the jurisdictional evidence favorable to Smithson—that the sewer main running outside Smithson's home had experienced a blockage several days before and again several days after the sewage entered her home and that on both occasions, the City had used a jetter to clear the blockages—and indulging every reasonable inference and resolving any doubts in her favor, we concluded that a fact issue remained on whether the jetter's use had "actually caused" the sewer backup in her home and thus whether her damages "arose from" the jetter's use. *Id.* at *1, *5. Accordingly, we affirmed the trial court's denial of the City's plea to the jurisdiction. *Id.*

## B. Pleadings and Motions

In his live pleading, Webb sought damages for a constitutional taking under Article I, Section 17, for common law nuisance and statutory nuisance per se, and for a declaratory judgment that the letter the City sent to his insurance company misstated the law applicable to his claims and that the City is not immune from nuisance liability when the nuisance amounts to a taking under Article I, Section 17.[7] He alleged that on May 14, 2018, he came home to a flooded house and "immediately contacted the

---

[7]In the June 25, 2019 letter from the City's property and casualty adjuster to Safeco Insurance's subrogation resolution specialist, the City's adjuster denied Safeco's subrogation claim, paraphrasing Civil Practice and Remedies Code Section 101.021. The adjuster did not mention Article I, Section 17.

City's water department." According to Webb, City employees arrived later that evening, performed an inspection, and told him that the problem was an obstruction in the City's sewer lines. Webb alleged that the City employees told him that the City was at fault, told him to file a claim with the City, and told him that the City would provide for all necessary cleaning and repairs. Webb complained that the City and its chosen contractor had failed to properly remediate the situation and caused further damage to his home, and he complained that the City had refused to pay anything beyond his home insurance policy's deductible.

Webb alleged that the City knew or could have predicted that the sewer would flood his house based on an earlier incident involving his house and the sewer line in August 2012 and that the City had "improperly maintained the sewer, having gone over 5½ years without cleaning out the sewer system or conducting reasonable periodic maintenance of the sewer line knowing that backups of raw, noxious sewage into private residences are inherent in the nature of sewer systems." He stated, "After the sewage backup, the City cleared the blockage by the use of motor-driven equipment, which had not been used to clean that sewer line since August 2012."

In the City's first amended plea to the jurisdiction and summary-judgment motions, the City asserted that Webb had failed to plead any fact that constituted a waiver of the City's governmental immunity and that, under the case's circumstances, Webb was unable to plead any facts sufficient to waive the City's immunity. Specifically, in its amended plea to the jurisdiction, the City argued that there was no

11

nexus between the home's flooding and the use of motor-driven vehicles or equipment and that there was no clear waiver of immunity.[8] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; Tex. Health & Safety Code Ann. § 343.011.

The City attached to its plea and motions the first amended affidavit of Luke Coffman, one of the City's assistant water systems superintendents. In his affidavit, Coffman stated,

> On May 14, 2018, a City of Fort Worth crew went to [Webb's home] in response to a complaint by Mr. Webb of a sewer backup that caused flooding in his home. They determined that the backup was caused by a blockage in the main sewer line. The City crew cleared the blockage. The blockage and resulting damage to [Webb's] residence . . . was caused by an accumulation of various materials in the sewer line. It was not caused by the use of any motor-driven equipment by any employee of the City of Fort Worth. Other than the installation of a cleanout at [Webb's home] in February 2016, motor-driven equipment had most recently been used to clean that sewer line in August 2012 and no motor-driven equipment had been used on that line for maintenance, construction, repair or any other reason since August[] 2012. The City's Water Department tries to clean sewer lines once every ten years.

Regarding the February 2016 clean-out at Webb's house, Coffman stated,

> There was a complaint of an emergency sewer situation at [Webb's house] on the evening of February 5, 2016. The City installed a cleanout and inserted a camera into the cleanout to determine the source of the problem. The problem was located within the customer's sewer line on

---

[8]In its no-evidence motion, the City argued that there was no evidence that the City knew that a specific act had caused identifiable harm or that the specific property damage was substantially certain to result from an authorized governmental action. In its traditional motion, the City argued that Webb had to plead and prove that the City knew that a specific act by the City would cause the specific harm of which Webb complained but that he had not done so and could not do so because the flooding had already occurred by the time the City cleared the clog.

the premises at [Webb's house] before it connected with the City's sewer system. This problem with the customer's sewer line in February 2016 was completely unrelated to the sewer clog and sewer backup at [Webb's house] on May 14, 2018 and did not provide notice to the City of any problem related to the City's sewer system. Specifically, the City had no knowledge or notice of the blockage that resulted in the sewer backup at [Webb's house] on May 14, 2018.

Webb attached his own affidavit to his response to the City's plea and declared that the facts he stated were within his personal knowledge as the homeowner, but with regard to the sewer system, some of the facts he set forth were "based on information and belief" and others were made without reference to personal knowledge, such as his statement that the City had improperly maintained the sewer "having gone over 5½ years without cleaning out the sewer system or conducting reasonable periodic maintenance of the sewer line knowing that backups of raw, noxious sewage into private residences are inherent in the nature of sewer systems."[9] Webb did not explain how he knew what constituted reasonable periodic maintenance or his basis for concluding that the *City* knew that sewage backups were inherent to

---

[9]During the hearing, when Webb complained that he still needed to take depositions, the trial court asked him, "What discovery would change the outcome of the summary judgment motion?" and "[W]hat do you still need so that you can properly respond to the summary judgment motions?" Webb replied, "They have their own employees that are saying that they have complied with the standard of care for maintaining the sewer and . . . all they have to do is clear it out once every ten years, and they've done that within ten years; therefore, they've met their standard of care." He did not further elaborate on what discovery he might need to rebut the City's employees on summary judgment. Instead, he stated that he was relying on *Jennings* to defeat the City's plea to the jurisdiction. The City pointed out at the conclusion of the hearing that it had not been served with a deposition notice and had not been asked to arrange depositions.

13

the sewer system's nature. *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) ("Speculation is not evidence."); *see also Trimm v. U.S. Bank, Nat. Ass'n*, No. 02-12-00230-CV, 2014 WL 3535724, at *4 (Tex. App.—Fort Worth July 17, 2014, no pet.) (mem. op.) ("A statement is conclusory if it expresses a subjective belief and gives no factual support for that belief.").

Webb filed a cross-motion for partial summary judgment on his claim for declaratory relief as to the letter sent by the City to his insurance company that denied his insurance company's subrogation claim based on the TTCA but failed to mention Article I, Section 17.

The trial court held a hearing on the plea to the jurisdiction and cross-motions for summary judgment. During the hearing, the City argued that there was no evidence that the City knew some action would cause flooding in Webb's home, that the City had taken no action that it knew would cause flooding, and that the flooding did not result from any governmental action. The City also argued that Webb was not entitled to declaratory relief because his declaratory-relief claim was "redundant of the [nuisance and inverse condemnation] issues to be decided in the main case." *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009) ("[A] litigant's request for declaratory relief does not alter a suit's underlying nature.").

14

**C. Analysis**

On appeal, Webb argues that he had specifically pleaded that he had not consented to the damaging of his property "caused by [the City's] intentional and negligent operation and maintenance of its sanitary sewer system," that he pleaded a constitutional taking of his property, and that the nuisance caused by the City amounted to a constitutional taking.

The City's evidence showed that in August 2012, the City had used motor-driven equipment to clean out the sewer line and that the sewer line was not due for another cleaning until 2022 (every 10 years); that in February 2016, the City had installed a cleanout at Webb's home; and that in May 2018, only after the City determined that the backup was caused by a blockage in the main sewer line did the City clear the blockage. With regard to the February 2016 clean-out, the City inserted a camera and determined that the problem was with Webb's sewer line before it connected to the City's sewer system. Coffman stated in his affidavit that the February 2016 problem was unrelated to the May 2018 problem and that the City had no knowledge or notice of the May 2018 blockage until Webb reported it.

Webb's allegations were insufficient to draw a nexus between the May 2018 flooding of his home and the City's use of motor-driven equipment because, unlike in *Smithson*, the City did not use motor-driven equipment until *after* the flooding had already occurred. *See* 2021 WL 4472629, at *5. Further, nothing in the record reflects that the City knew that a specific act would cause the sewer to flood Webb's house, or

that such flooding was substantially certain to result, when nothing beyond Webb's speculative and conclusory statements about sewer maintenance contradicted Coffman's statement that the City tried to clean the sewer lines once every 10 years. *See Jennings*, 142 S.W.3d at 314. Accordingly, we overrule Webb's third issue.

Webb argues in his fourth issue that the trial court should not have dismissed his claims with prejudice and should have given him a reasonable opportunity to amend. However, both parties relied on *Jennings*, which—as set out above—is dispositive of Webb's claims, and Webb had ample opportunities to amend his pleadings prior to the hearing.[10] Accordingly, the trial court did not err by dismissing the claims without allowing Webb a chance to amend,[11] and we overrule his fourth issue.

---

[10]The record reflects that Webb filed his supplemental petition, adding the City to the case, on May 14, 2020, two years after the sewer flooded his house. He filed his second supplemental petition, adding his declaratory judgment claim, the next day. The City answered with an assertion of governmental immunity a month later, and it filed its first plea to the jurisdiction and summary-judgment motions in December 2020. Webb filed his third supplemental petition, in which he addressed *Jennings*, on January 6, 2021. The trial court's hearing on the City's plea and motions was set for February 4, 2021, but the parties agreed to postpone it in a Rule 11 agreement. The trial court heard the plea and motions on April 20, 2021, almost a full year after Webb filed his first supplemental petition.

[11]Webb states that the concurrent filing of a plea to the jurisdiction and summary-judgment motions on the merits "may present problems if the trial court grants both" because if the trial court determines that it lacks jurisdiction, it should refrain from proceeding on the merits. As set out above, the merits of Webb's case were implicated in the jurisdictional analysis, and to the extent the trial court erred by granting both the City's plea and its motions for summary judgment, we conclude that any such error was harmless. *See* Tex. R. App. P. 44.1(a); *Town of Shady Shores v.*

16

### III. Findings of Fact and Conclusions of Law

After the trial court entered its order granting the City's plea and motions, denying Webb's motion, and dismissing Webb's claims with prejudice, Webb timely requested findings of fact and conclusions of law and then filed a timely notice of past-due findings and conclusions. *See* Tex. R. Civ. P. 296–297. The court coordinator notified Webb by email that the trial court would not be issuing findings and conclusions. In his first issue, Webb complains that the trial court abused its discretion by failing to file findings of fact and conclusions of law when he and the City each filed sworn evidence even though there was no evidentiary hearing.

Findings of fact and conclusions of law are not appropriate after summary judgment or "dismissal for want of jurisdiction without an evidentiary hearing, dismissal based on the pleadings . . . , and any judgment rendered without an evidentiary hearing." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997). In the summary-judgment context and in other non-evidentiary hearing situations, the trial court is not called upon to determine questions of fact based on conflicting evidence. *Smith v. Pallida, L.L.C.*, No. 02-17-00326-CV, 2018 WL 895465,

---

*Swanson*, 590 S.W.3d 544, 551–52 (Tex. 2019) ("[W]hen a challenge to jurisdiction that implicates the merits is properly made and supported, whether by a plea to the jurisdiction or by a traditional or no-evidence motion for summary judgment, the plaintiff will be required to present sufficient evidence on the merits of her claims to create a genuine issue of material fact."). In light of our disposition of Webb's third and fourth issues, we do not reach his fifth and sixth issues, in which he complains that the trial court erred by granting the City's no-evidence and traditional motions for summary judgment. *See* Tex. R. App. P. 47.1.

17

at *2 (Tex. App.—Fort Worth Feb. 15, 2018, no pet.) (mem. op.); *cf. Hernandez v. Tex. Dep't of Ins.*, 923 S.W.2d 192, 194 (Tex. App.—Austin 1996, no writ) (noting that a request for findings and conclusions was appropriate when there was an evidentiary hearing on a jurisdictional plea and the cause was dismissed based upon evidence presented and facts determined at the hearing).

Here, Webb acknowledges that the trial court did not hold an evidentiary hearing. Accordingly, the trial court did not abuse its discretion by declining to file findings and conclusions, and we overrule Webb's first issue.

### IV. Evidentiary Hearing

In his second issue, Webb asserts that the trial court abused its discretion by failing to hold an evidentiary hearing on the City's plea to the jurisdiction. In its amended plea and summary-judgment motions, the City requested a hearing. Webb likewise requested a hearing on his motion for partial summary judgment. Neither party requested an evidentiary hearing or sought to introduce evidence at the hearing. *Cf. Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 150 (Tex. 2015) (noting that the respondents "requested an evidentiary hearing").

Further, a jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject matter jurisdiction. *Id.* If, however, the plea challenges the existence of jurisdictional facts, we must move

18

beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject matter jurisdiction and the claim's merits. *Id.* at 770–71. If a jurisdictional plea challenges the existence of jurisdictional facts with supporting evidence, then—as in the summary-judgment context—to avoid dismissal, the plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Id.* at 771.

Although Webb argues that his case involves disputed facts, when neither party requested an evidentiary hearing, neither party sought to introduce evidence at the hearing on the plea to the jurisdiction,[12] and the record does not reflect any actual disputed dispositive facts,[13] we cannot say that the trial court erred by not sua sponte ordering an evidentiary hearing on the plea to the jurisdiction, and we overrule Webb's second issue.

---

[12]Notwithstanding Webb's complaint, after Webb stated that he was relying on *Jennings* to defeat the City's plea to the jurisdiction, the record reflects that the trial court asked him, "Is there anything else you wanted to present either on the plea to the jurisdiction, their motion, or your motion?" Webb argued his motion for partial summary judgment and then said, "Right," when asked by the trial court, "So you have nothing further to add?"

[13]No one disputes that Webb's house was flooded by a sewer blockage in 2018 or that the City did not take any action until *after* the sewer blockage was reported to it.

19

## V. Conclusion

Having overruled Webb's dispositive issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  January 13, 2022