

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00589-CV

Renee Kirchoff **CHAPA**, in her official capacity as County Commissioner of Jim Wells County, Texas; and Jim Wells County, Texas,
Appellants

v.

**WYATT RANCHES OF TEXAS, LLC**,
Appellee

From the County Court, Jim Wells County, Texas
Trial Court No. 22-04-61861-CV
Honorable Michael Ventura Garcia, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: May 10, 2023

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

In the underlying lawsuit, appellee, Wyatt Ranches of Texas, LLC ("Wyatt Ranches"), alleged various causes of action against appellants who, in turn, filed a plea to the jurisdiction. Renee Kirchoff Chapa, in her official capacity as County Commissioner of Jim Wells County, Texas; and Jim Wells County, Texas (collectively, "appellants"), appeal from the trial court's denial of their plea to the jurisdiction. We affirm the trial court's order denying appellants' plea to the jurisdiction based on Wyatt Ranches' negligence claim, reverse the trial court's order denying appellants' plea to the jurisdiction based on Wyatt Ranches' trespass and inverse

condemnation claims, and render judgment dismissing Wyatt Ranches' trespass and inverse condemnation claims.

## BACKGROUND[1]

Wyatt Ranches owns real property in Jim Wells County, Texas, located along County Road 352. The property is known as the Perez Ranch. Chapa is a Jim Wells County Commissioner who supervises and directs county employees in her precinct to conduct certain operations. These operations include, but are not limited to, maintaining public roadways and clearing brush or tree limbs on county rights-of-way that might cause an obstruction to passing motorists. Oftentimes (as in this case), motor-driven equipment is used to cut and clear the brush. Additionally, hydraulic grapplers, trucks, and trailers are used to cut down, destroy, and haul off the remnants of the brush and trees.

On or about December 21, 2021, Chapa directed county employees under her control and command to cut down forty-nine trees located on the Perez Ranch. To accomplish this, the county employees left the public right-of-way and entered onto the Perez Ranch and proceeded to cut down and remove trees located entirely on ranch property. Also destroyed were trees that were partially located on the property and five outdoor waterproof security cameras positioned in the trees. Wyatt Ranches contended none of the destroyed trees obstructed or otherwise impeded the public right-of-way.

Wyatt Ranches alleged the destruction of the trees was done without notice or consent and Chapa never contacted the landowner to confirm or identify which trees were on private property and which trees were on the right-of-way before cutting down the forty-nine trees. Wyatt Ranches argued the destruction and removal of the trees was accomplished with motor-driven equipment,

---

[1] The background facts are taken from Wyatt Ranches' first amended petition.

including but not limited to, motor-driven chain saws, hydraulic grapplers, trucks, and trailers, all of which were operated by employees of Jim Wells County and/or at Chapa's direction.

Wyatt Ranches sued appellants for trespass to real property and negligence and gross negligence. Wyatt Ranches sued Jim Wells County for inverse condemnation. Finally, Wyatt Ranches alleged claims under the Texas Tort Claims Act (the "TTCA"). Appellants filed a joint plea to the jurisdiction asserting immunity was not waived under the TTCA and that Wyatt Ranches' pleadings do not support a constitutional inverse condemnation claim. Various responses and replies were filed. The trial court conducted a hearing, and later signed an order denying appellants' plea to the jurisdiction. This accelerated appeal ensued.

## GOVERNMENTAL IMMUNITY UNDER THE TTCA

On appeal, appellants argue the TTCA does not waive their immunity from Wyatt Ranches' tort claims for two reasons. First, appellants note that the TTCA's immunity-waiver provision requires any property damage to "arise" from "the operation or use of a motor-driven vehicle or motor-driven equipment." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). Appellants contend the County's use of motor-driven equipment was merely 'incidental," and the "gravamen" of Wyatt Ranches' complaint was a negligent failure "to confirm or identify which trees were on private property and which trees were on the right-of-way" of the county road. Second, appellants contend the facts alleged by Wyatt Ranches amount to a trespass—a tort that falls within the TTCA's intentional-tort exclusion. *See id.* § 101.057.

### A.     Standard of Review

Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 301 (Tex. 2019). "[G]overnmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex.

2018). The TTCA waives immunity when the plaintiff states a claim for conduct that violates the statute. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Id.* When, as here, a jurisdictional plea challenges the pleadings, we determine if the plaintiff alleged facts affirmatively demonstrating subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* "Where the pleadings generate a 'fact question regarding the jurisdictional issue,' a court cannot sustain the plea to the jurisdiction." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015).

"If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff[] should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff[] an opportunity to amend." *Id.* at 227. Thus, to defeat a plea to the jurisdiction, the plaintiff suing the governmental entity or its officers must plead facts that, if true, "affirmatively demonstrate" that governmental immunity either does not apply or has been waived. *Id.* at 226. Whether a court has subject-matter jurisdiction is a question of law we review de novo. *Id.*

**B.     County's Use of Motor-Driven Equipment**

A governmental unit is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> (A) the property damage, personal injury, or death *arises from the operation or use of* a motor-driven vehicle or *motor-driven equipment*; and

> (B) the employee would be personally liable to the claimant according to Texas law; . . . .

TEX. CIV. PRAC. & REM. CODE § 101.021(1) (emphasis added).

Although the TTCA waives immunity for property damage that "arises from the operation or use of . . . motor-driven equipment," *id.*; "not all uses of motor-driven equipment are sufficient to waive immunity." *San Antonio Water Sys. v. Overby*, 429 S.W.3d 716, 722 (Tex. App.—San Antonio 2014, no pet.). The damage must "rise from" such use. The TTCA does not define "arises from." The Texas Supreme Court has defined this standard as a "nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Ryder Integrated Logistics*, 453 S.W.3d at 928 (citation omitted); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) ("The phrase 'arises from' requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment.").

"This nexus requires more than mere involvement of property." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) ("Whitley's injuries did not arise from the use of the bus. Rather, his injuries arose from the bus driver's failure to supervise the public, which is insufficient to waive immunity under the Tort Claims Act."). Instead, "the equipment's use must have actually caused the injury." *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). Thus, the operation or use of motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Whitley*, 104 S.W.3d at 543 (citation omitted); *Ryder Integrated Logistics*, 453 S.W.3d at 928 ("In other words, even where the plaintiff has alleged a tort on the part of a government driver, there is no immunity

waiver absent the negligent or otherwise improper use of a motor-driven vehicle.").[2] The Supreme Court has described the threshold as something more than actual cause but less than proximate cause. *Ryder Integrated Logistics*, 453 S.W.3d at 928-29. "Accordingly, a plaintiff can satisfy the 'arising from' standard by demonstrating proximate cause." *Id.* at 929 (noting, "[t]his is particularly appropriate in the context of the TTCA, which only reaches injuries 'proximately caused by the wrongful act or omission or the negligence of an employee.'"). The components of proximate cause are cause in fact and foreseeability. *Id.*

In their plea to the jurisdiction, appellants contended Wyatt Ranches did not allege its injuries arose because County employees were negligent in how they used motor-driven equipment. Instead, according to appellants, Wyatt Ranches complained Chapa never contacted them to confirm or identify which trees were on private property. Therefore, any injury arose from alleged negligence in identifying the property line and not from the use of motor-driven equipment. On appeal, appellants argue the use of a chain saw to remove trees should not trigger immunity because the true nature of Wyatt Ranches' claim is the erroneous judgment concerning the boundary between the county right-of-way and private property.

Appellants do not dispute that the equipment used by the County to remove the trees was motor-driven. *See White*, 46 S.W.3d at 868 ("'Equipment,' which is not specially defined either by the Tort Claims Act or an opinion of this Court, generally means '[t]he articles or implements

---

[2] *See City of Laredo v. New Yorkers Apparel, Inc.*, No. 04-04-00887-CV, 2005 WL 1458248, at *4 (Tex. App.—San Antonio June 22, 2005, no pet.) (mem. op.) ("use of the motor-driven equipment to remove the pavement and base did not actually cause the flooding. Instead, the flooding was actually caused by the condition of the sidewalk and road as it existed after the removal. Although the condition may have been negligently created by the City, the motor-driven equipment did no more than furnish the condition that made the injury possible. Accordingly, the City's immunity is not waived."); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 867 (Tex. App.—Eastland 2004, no pet.) ("Although the Breedloves attempted to bring their claim within the waiver of Section 101.021(1)(A) by phrasing their claim in terms of Ector County's 'use' of motor-driven equipment, Ector County's use of motor-driven equipment only furnished the condition-the increased grade and misplacement of culverts—that caused the flooding of their home. The use of the motor-driven equipment did not cause the Breedloves' injury within the meaning of the waiver language in Section 101.021(1)(A).").

used for a specific purpose or activity.' [citation omitted] "'Motor-driven' means, quite simply, driven by a motor."). Nor do appellants dispute that the motor-driven equipment was used by the County to remove trees from Wyatt Ranches' property. *LeLeaux*, 835 S.W.2d at 51 (citation omitted) ("'[o]peration' refers to 'a doing or performing of a practical work,' . . . and 'use' means 'to put or bring into action or service; to employ for or apply to a given purpose'. . ..."). Finally, appellants do not argue that the individuals operating the motor-driven equipment were not "employees" of the County. *See* TEX. CIV. PRAC. & REM. CODE § 101.001(2) ("'Employee' means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control."). The dispute is thus narrowed to whether Wyatt Ranches alleged facts affirmatively demonstrating subject-matter jurisdiction—i.e., the motor-driven equipment actually caused the injury. We return to the components of proximate cause.

Regarding the first component of proximate cause, "[c]ause in fact is essentially but-for causation." *Ryder Integrated Logistics*, 453 S.W.3d at 929. "In other words, a tortious act is a cause in fact if it serves as 'a substantial factor in causing the injury and without which the injury would not have occurred.'" *Id.* (citation omitted). "Because proximate cause is ultimately a question for a fact-finder, we need only determine whether the petition 'creates a fact question' regarding the causal relationship between [Chapa's] conduct and the alleged injuries." *Id.* Wyatt Ranches pled that by directing County employees under her control and command to cut down forty-nine trees, Chapa caused a loss of significant value to Wyatt Ranches. These allegations easily satisfy the standard that Wyatt Ranches' damages were proximately caused by "the wrongful

act or omission or the negligence of an employee" (Chapa) arising "from the operation or use of . . . motor-driven equipment."[3]

Regarding the second component of foreseeability, Wyatt Ranches alleged the destruction of the trees was done without notice or consent, and Chapa did not contact the landowner to confirm or identify which trees were on private property and which trees were on the right-of-way before cutting down the forty-nine trees. "Foreseeability requires only 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might

---

[3] *See PHI*, 593 S.W.3d at 306 ("While [the driver] had turned off and exited the van before it collided with the helicopter, the statute does not require in every case that the driver be in the vehicle at the precise time of the collision. The statute requires that the accident arise from the use or operation of the vehicle, and as explained above, we conclude that this language covers the allegations in question because 'operation' of a vehicle includes making sure it does not roll away after it is parked."); *Ryder Integrated Logistics*, 453 S.W.3d at 929 (because the injuries would not have occurred but for the officer's decision to position the headlights of his patrol car toward oncoming traffic, his action was a cause-in-fact of the injuries); *City of Houston v. Nicolai*, 539 S.W.3d 378, 390 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (holding police officer's affirmative decision not to use seat belt to restrain detainee was a substantial factor in causing detainee's ejection from patrol car during traffic collision); *City of Houston v. Sw. Bell Tel. Co.*, No. 01-16-00734-CV, 2017 WL 3262131, at *1, *5 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet.) (mem. op.) (Southwestern Bell alleged City's operation of a backhoe was negligent because City's employees failed to ascertain what underground utilities were in the area before digging, thus damaging Southwestern Bell's underground cable; court held evidence was legally sufficient to support determination that Southwestern Bell's injury "arose from" operation of motor-driven equipment); *Kilburn v. Fort Bend Cnty. Drainage Dist.*, 411 S.W.3d 33, 36 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (County undertook excavation operations to remove debris from a creek and grade its banks. Some of this work took place on the Kilburns' property, on which the County's records erroneously indicated it had an easement. By the time the County discovered the error in its records, the excavation work was substantially complete. According to the Kilburns, the County's work damaged the creek and the surrounding property both aesthetically and functionally. The County alleged section 101.021(1) did not apply because "[t]here was nothing negligent about the operation or use of the motor-driven equipment in this case." Court concluded Kilburns alleged sufficient facts to demonstrate trial court's jurisdiction.); *Doyal v. Tex. Dep't of Criminal Justice-Institutional Div.*, 276 S.W.3d 530, 535 (Tex. App.—Waco 2008, no pet.) (holding Doyal's petition adequately pled that his personal injury was proximately caused by the TDCJ's employee's negligence in the operation or use of the motor-driven cell door; thus stating a claim under section 101.021(1)); *Freeman v. Harris Cnty.*, 183 S.W.3d 885, 889 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (Freeman alleged facts supporting his claim that his damages arose from a County employee's use of motor-driven equipment, i.e., an incinerator, and that there was proximate causation between the employee's alleged negligence and the loss of Freeman's baby's body. Freeman alleged, among other things, that the County's employees failed to follow County policy regarding the proper procedures for handling the baby's body and that this failure resulted in the use of the incinerator to negligently dispose of the baby's body following his autopsy. County argued that any damages suffered by Freeman were caused by the negligent acts of an individual employee and not by the negligent use of the incinerator, itself. Court held the trial court erred in dismissing Freeman's case for lack of subject-matter jurisdiction.); *City of El Paso v. W.E.B. Invs.*, 950 S.W.2d 166, 170 (Tex. App.—El Paso 1997, writ denied) (holding that negligence of a City employee in ordering the motor-driven equipment to demolish the wrong building waived the City's immunity).

reasonably have been foreseen.'" *Id.* A reasonable person in Chapa's position could have foreseen that directing trees to be cut down, without confirming the location of the trees, might lead to the destruction of trees on private property much like the destruction that ultimately occurred here. The alleged harm is of the very character that might reasonably have been anticipated.

Upon consideration of these allegations, we conclude Wyatt Ranches alleged an injury arising from the use of motor-driven equipment for the purpose of Civil Practice and Remedies Code section 101.021 by demonstrating proximate cause. Accordingly, the trial court did not err in denying appellants' plea to the jurisdiction based on Wyatt Ranches' negligence claims.

## C. The TTCA's Intentional Tort Exclusion

In their plea to the jurisdiction, appellants contended the alleged conduct amounted to a trespass—an intentional tort—for which immunity is not waived. Although the TTCA provides a limited waiver of immunity for certain suits against governmental entities; *see* TEX. CIV. PRAC. & REM. CODE § 101.021; it does not waive immunity for claims arising from any intentional tort. The limited waiver "does not apply to a claim:"

> (1) based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or
> (2) arising out of assault, battery, false imprisonment, or *any other intentional tort*, including a tort involving disciplinary action by school authorities.

*Id.* § 101.057 (emphasis added).

Trespass is an intentional tort. *See Hidalgo Cnty. v. Dyer*, 358 S.W.3d 698, 704 (Tex. App.—Corpus Christi 2011, no pet.). "A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation." *Harris Cnty. v. Cypress Forest Pub. Util. Dist. of Harris Cnty.*, 50 S.W.3d 551, 554 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

In determining whether Wyatt Ranches' claims are barred by immunity, we look to the substance of the claims alleged because governmental immunity cannot be circumvented by artful pleading. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 389 (Tex. 2011) ("The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit."); *McLennan Cnty. Water Control & Improvement Dist. #2 v. Geer*, No. 10-17-00399-CV, 2020 WL 4218085, at \*4 (Tex. App.—Waco July 22, 2020, no pet.) (mem. op.) (concluding trial court erred in denying defendant's plea to the jurisdiction because plaintiffs' "factual allegations encompass intentional rather than negligent acts"). Wyatt Ranches alleged trespass to real property as follows:

> At the time the causes of action asserted herein arose, Plaintiff owned the Property. Defendants' act of entering the Property and removing and destroying trees outside of the County Road 352's public right-of-way was physical, intentional and was voluntary and constitutes a trespass to real property. Defendants did not have permission, consent, or authority to enter the Property outside of the public right-of-way, and Defendants did not have permission, consent, or authority to clear and remove or destroy trees located wholly or partially on the Property. As a direct and proximate result of above-described acts of Defendants, Plaintiff has been injured and sustained damages in excess of the minimum jurisdictional limits of this Court for which they hereby sue.

We agree with appellants' that immunity is not waived for any claim by Wyatt Ranches based on the intentional tort of trespass. Therefore, the trial court erred in denying appellants' plea to the jurisdiction based on Wyatt Ranches' trespass claim. However, "a plaintiff's negligence claim against a governmental unit may arise out of the same facts that would also give rise to an intentional-tort claim absent the governmental unit's sovereign immunity." *Kilburn*, 411 S.W.3d at 39 ("the fact that the employees intentionally entered the property and undertook the excavation work does not, standing alone, transform the Kilburns' negligence claim into a trespass claim"). "[T]he dispositive inquiry is whether the employees intended the specific damages they caused." *Id.*

Wyatt Ranches' negligence claim is based on the same operative facts as its trespass claim. Therefore, the factual allegations in Wyatt Ranches' petition supports its negligence claim under the TTCA. *Compare id.* at 39 ("In this case, the conduct of which the Kilburns primarily complain is not the County employees' act of entering the property, and the harm is not violation of their property rights. . . . Construing the petition liberally in favor of the Kilburns and looking to their intent, we conclude that the gist of their complaint is that the County employees negligently performed excavation work in such a way as to cause physical damage to the Kilburns' property."), *with Harris Cnty.*, 50 S.W.3d at 554 (concluding appellee's petition stated a cause of action for intentional trespass because "the facts contained in appellee's Second Amended Petition can only support a theory of intentional trespass."). We conclude that although Wyatt Ranches' trespass claim may be barred under Texas Civil Practice and Remedies Code section 101.057, its negligence claim is not.

## INVERSE CONDEMNATION CLAIM

Finally, Wyatt Ranches alleged a takings claim in violation of Article I, section 17 of the Texas Constitution. That section provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17(a). Neither sovereign nor governmental immunity shield a governmental entity from a claim based on an unconstitutional taking of property. *Sawyer Tr.*, 354 S.W.3d at 390. "If, however, the plaintiff fails to allege a valid takings claim, the governmental entity retains its immunity from suit." *City of Floresville v. Starnes Inv. Group, LLC*, 502 S.W.3d 859, 866 (Tex. App.—San Antonio 2016, no pet.). Whether a plaintiff's allegations are sufficient to constitute a takings claim is a question of law for the trial court to decide. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998).

"Generally, the government compensates the owner before appropriating property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding." *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). "If, however, the government appropriates property without paying adequate compensation, the owner may recover the resulting damages in an 'inverse condemnation' suit." *Id.* "An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development." *Id.* The appropriated property must also be applied to public use. *Id.*

The elements of an inverse condemnation claim are (1) a governmental entity intentionally performed certain acts (2) that resulted in a taking or damaging of property (3) for public use. *City of Floresville*, 502 S.W.3d at 866. A taking "cannot be established by proof of mere negligent conduct by the government." *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016). "The essential element that must exist for a taking to be compensable is that the private property was taken for, or applied to, public use." *State v. Gafford*, No. 04-03-00168-CV, 2003 WL 22011302, at *3 (Tex. App.—San Antonio Aug. 27, 2003, no pet.) (mem. op.). "When private property is damaged or destroyed merely as the result of government employees' negligence, it is not taken or damaged for public use." *Id.*

In its petition, Wyatt Ranches alleged as follows:

> At all times described herein, Chapa and Jim Wells County (through Chapa) were acting with the intent to cut down and destroy the forty-nine (49) trees located on the Perez Ranch. It is clear that the destruction of the subject trees constituted calculated and deliberate acts perpetrated by the Defendants. When Chapa gave the directives to remove such trees, the language used included verbiage such as "shit trees," "trash trees," and "ugly trees." The fact that such adjectives were used by Chapa when directing her crew to destroy them leaves no doubt of her intent. In the most general of terms, Jim Wells County and Chapa have the authority to cut, trim and remove trees to discard such brush for reasons such as clearing the rights

of way for improved visibility and/or for prevention of brush fires or other public purposes. What they do not have is unfettered access to go onto a person's property and destroy it without compensation. The Plaintiff was not and has not been compensated for the unlawful taking of such trees to date. The destruction and taking of Plaintiff's trees to provide unincumbered views, for the prevention of brush fires or for any other use that would serve the public, exactly fits the public use/purpose contemplated by Texas Law.

The above-described intentional conduct on the part of Chapa and Jim Wells County and its employees resulted in an unconstitutional taking of property owned by Plaintiff—their trees and real property rights—under section 17 of the Texas Constitution without adequate compensation. Article I, Section 17 of the Texas Constitution provides a right to compensation when property is taken for public use. In the instant case, the Defendants performed the act of cutting down and destroying Plaintiff's trees, without compensation for public use.

In its plea to the jurisdiction, appellants contended the intent and public-use elements were absent because the pleadings do not allege facts showing (1) any taking of Wyatt Ranches' property was within the authority of the county commissioner or any county employee and (2) any specific intent to take Wyatt Ranches' property for public use.

In the context of an inverse condemnation claim, "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). It is not enough that the act causing the harm be intentional. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). In *Jennings*, the Texas Supreme Court explained the type of intent that must be shown to establish an inverse condemnation claim. The Court held it is not enough to show merely that the governmental entity intended to perform the act that resulted in the taking or the damage, because such a standard would hold the governmental entity to a stricter standard of liability than a private person engaging in the same acts. *Id.* at 313. "Such a requirement would also ignore the predicate of Article I, Section 17: that the damage be 'for or applied to public use.'" *Id.* "When damage is merely the accidental result of the government's

act, there is no public benefit and the property cannot be said to be 'taken or damaged for public use.'" *Id.*

Wyatt Ranches argued Chapa ordered the trees cut down without notice or consent, and never contacted the property owner to confirm or identify which trees were on private property and which trees were on the right-of-way. Even if Chapa intentionally directed employees under her control to destroy trees on Wyatt Ranches' property, not every "intentional act can give rise to liability for an intentional taking." *Id.* Based on the allegations in Wyatt Ranches' petition, Chapa's actions amounted, at most, to negligence; however, "[m]ere negligence is not the lawful exercise of governmental authority, and therefore, does not constitute a compensable taking." *Id.* (holding, damage or destruction that occurs "merely as the result of government employees' negligence" is "not taken or damaged for public use"). We conclude Wyatt Ranches failed to allege the County acted with specific intent to take its property for public use. *See Gafford*, 2003 WL 22011302, at *3 (concluding same based on plaintiff's allegations that "[t]he entry of the Defendant, TxDOT, its agents, servants and employees upon Plaintiff's land was made without Plaintiff's knowledge or consent. The unlawful entry and the destruction of the trees and vegetation on Plaintiff's property, without his consent or just compensation, amounts to a taking of his property."). Accordingly, the trial court erred in denying appellants' plea to the jurisdiction based on Wyatt Ranches' inverse condemnation claim.

The only question then is whether Wyatt Ranches' pleading demonstrates an incurable defect, or whether it should be given the opportunity to amend its pleadings. Based on the arguments presented, there is no indication that the defects discussed above are curable. *See Miranda*, 133 S.W.3d at 226-27. As such, we decline Wyatt Ranches' request to remand the case to the trial court so it may have the opportunity to amend its pleadings.

**CONCLUSION**

We affirm the trial court's August 31, 2022 "Order Denying Defendant's [sic] Plea to the Jurisdiction" ("the order") based on Wyatt Ranches' negligence claims. We reverse the order to the extent it denied appellants' plea to the jurisdiction based on Wyatt Ranches' trespass and inverse condemnation claims and we render judgment dismissing those claims.

Lori I. Valenzuela, Justice